**JUDGE NORGLE**
**MAGISTRATE JUDGE ASHMAN**

**08 C 1129**

# EXHIBIT C

FILED & RECORDED
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA.

2006 MAR -2 PM 2: 00

TOM LAWLER, CLERK

AFTER RECORDING RETURN TO:
Gregory D. Hughes - Hughes and White
2110 Powers Ferry Road
Suite 440
Atlanta, Georgia 30339

AFTER RECORDING RETURN TO:
Gregory D. Hughes - Hughes and White
2110 Powers Ferry Road
Suite 440
Atlanta, Georgia 30339

## DEED TO SECURE DEBT, ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT

**NOTE TO CLERK: NO INTANGIBLES RECORDING TAX DUE, MATURITY DATE LESS THAN THREE (3) YEARS-SHORT TERM NOTE**

**THIS INSTRUMENT IS A CONSTRUCTION MORTGAGE WITHIN THE MEANING OF SECTION 334(h) OF THE UNIFORM COMMERCIAL CODE AND SECURES AN OBLIGATION INCURRED FOR THE CONSTRUCTION OF AN IMPROVEMENT UPON LAND**

**This Deed to Secure Debt includes an assignment of leases and rents. This Deed to Secure Debt is also intended to constitute a fixture financing statement under the Uniform Commercial Code.**

THIS DEED TO SECURE DEBT, ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT ("Security Deed") is made as of February 28, 2006 by THE LANDINGS FLORIDA, LLC, a Florida limited liability company ("Grantor"), having an address at c/o Commercial Ventures, Inc., 12100 Wilshire Blvd., Suite 250, Los Angeles, CA 90025, Attn: Richard Nathan and Greg Beach, and ORIX REAL ESTATE CAPITAL, INC., having an address at 100 North Riverside Plaza, Suite 1400, Chicago, Illinois 60606, and its successors and assigns ("Lender") pursuant to a

CH01/ 12463019.5

0032902

Bristol Court

50

BK4621PG0010

certain Loan and Security Agreement of even date herewith between Grantor and Lender (the "**Loan Agreement**"). Capitalized terms used in this Security Deed and not defined in this Security Deed, but defined in the Loan Agreement, shall have the meanings given them in the Loan Agreement.

## WITNESSETH:

A.    Pursuant to the Loan Agreement, Lender has made a loan to Grantor in the maximum principal amount of $26,500,000 (Twenty-Six Million Five Hundred Thousand and No/100 Dollars) (the "**Loan**"). The Loan will mature on the Maturity Date set forth in the Loan Agreement. For reference purposes only, the Maturity Date is February 27, 2009, subject to earlier termination following the occurrence of an Event of Default in accordance with the terms of the Loan Agreement. Certain repayment obligations of Grantor with respect to the Loan are evidenced by Grantor's Note of even date herewith made payable to Lender (the "**Note**") in the principal amount of the Loan. Grantor's obligations relating to the payment of principal and interest in connection with the Loan are set forth in the Note and the Loan Agreement, which instruments are hereby incorporated fully into this Security Deed. The terms of the Loan Agreement contemplate that advances of the Loan may be made subsequent to the date of this Security Deed.

B.    Lender is desirous of securing the prompt payment of the Note together with interest and prepayment fees, if any, thereon in accordance with the terms of the Loan Agreement, and any additional indebtedness accruing to Lender on account of any future payments, advances or expenditures made by Lender pursuant to the Loan Agreement or this Security Deed and any additional sums with interest thereon which may be loaned to Grantor by Lender or advanced by Lender or otherwise owed to Lender under the Loan Documents as well as timely performance of all of Grantor's obligations under the Loan Documents.

NOW, THEREFORE, to secure payment of all obligations of Grantor to Lender from time to time for the payment of money under the Loan Documents (the "**Indebtedness**") and the performance of the payment or performance of any and all obligations of Grantor or any guarantors to Lender under the Loan Documents (the "**Obligations**"), including the covenants and agreements herein contained and contained in the other Loan Documents (the Indebtedness and the Obligations being collectively referred to as the "**Secured Obligations**"), and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Grantor has executed this Security Deed and does hereby grant, bargain, sell, convey, assign and transfer to Lender, a security interest in and security title in the following described property, rights and interests, together with all of Grantor's hereafter acquired estate, right, title or interest in or to, such property, rights and interests (collectively referred to as the "**Property**"), all of which property, rights and interests are hereby pledged primarily and on a parity with the Land (defined below) and not secondarily:

-2-

CH01/ 12463019.5

00011

(a) The real property legally described in **EXHIBIT A** attached hereto (the "**Land**") located in the State of Georgia (the "**State**");

(b) All buildings, structures and improvements of every nature whatsoever now or hereafter erected or situated on the Land, and all fixtures now owned or hereafter acquired by Grantor, on or used in connection with the Land or the improvements thereon, or in connection with any construction thereon, including all extensions, additions, improvements, betterments, renewals, substitutions and replacements to any of the foregoing and all right, title and interest of Grantor in and to any such fixtures together with the benefit of any deposits or payments now or hereafter made on such fixtures by or on behalf of Grantor;

(c) All easements, rights-of-way, licenses, permits, rights of use or occupancy, privileges, tenements, appendages, hereditaments and appurtenances and other rights and privileges thereunto belonging or in any wise appertaining to the Land, whether now or in the future, and all the rents, issues, profits, reversions and remainders therefrom;

(d) All right, title and interest, if any, of Grantor, in and to the land lying within any street, alley, avenue, roadway or right-of-way open or proposed or hereafter vacated in front of or adjoining the Land; and all right, title and interest, if any, of Grantor in and to any strips and gores adjoining the Land;

(e) All rents, revenues, issues, profits, proceeds, income, royalties, security deposits, impounds, reserves, tax refunds, termination payments, cancellation payments, option payments, service reimbursements, prepaid rents, royalties, damages payable upon a default under any Lease, concession fees, lease termination payments, and other rights to revenues from the Property and/or the businesses and operations conducted by Grantor on the Property (collectively, the "**Rents**");

(f) All right, title and interest of Grantor in all leases, subleases, license agreements, concession agreements, and other occupancy agreements of any nature now or hereafter on the Property whether written or oral (collectively, "**Leases**"), together with all guaranties thereof and security therefor and all monies payable thereunder;

(g) All proceeds of the foregoing, together with any and all judgments, awards, payments or insurance proceeds, including interest thereon, and the right to receive the same, which may be paid or payable with respect to the Property as a result of the exercise of the right of eminent domain, the alteration of the grade of any street, or any fire, casualty, accident, damage or

-3-

other injury to or decrease in the value of the Property, to the extent of all amounts which may be secured by this Security Deed at the date of receipt of any such award or payment by Lender, and of the reasonable counsel fees, costs and disbursements incurred by Lender in connection with the collection of such award or payment, and the proceeds of any sale, option or contract to sell the Property or any portion thereof.

TO HAVE AND TO HOLD the Property, together with all and singular the rights, privileges, hereditaments and appurtenances thereunto in any way incident, appertaining or belonging to the use, benefit, behoof of Lender forever, in fee simple. This Security Deed is a Security Deed to secure debt passing legal title pursuant to the laws of the State governing deeds to secure debt and is not a mortgage, and is made and intended to secure the Secured Obligations. Grantor hereby covenants, represents and warrants that, at the time of the ensealing and delivery of these presents, Grantor is well seised of the Property in fee simple and with lawful authority to grant, bargain, sell, convey, assign and transfer the Property, and Grantor does hereby warrant and will forever defend the title thereto against the claims of all persons whatsoever and will maintain and preserve the lien, security interest and security title as a first and paramount lien, security interest and security title on the Property, subject only to liens and encumbrances permitted by the terms of this Security Deed.

Without limitation of the foregoing, this Security Deed secures the prompt payment and performance of all of the Secured Obligations, which include, without limitation, the following:

(i)     payment of all principal, Minimum Interest, Exit Fee and all other indebtedness, any other interest and prepayment fees, if any, evidenced by, and in accordance with the terms of, the Note and the Loan Agreement, and any and all Charges, additional indebtedness accruing to Lender on account of any future payments, advances or expenditures made by Lender pursuant to the Loan Agreement, the Note or this Security Deed and any additional sums with interest thereon which may be loaned to Grantor by Lender or advanced under the Loan Documents;

(ii)     payment of such additional sums with interest thereon which may hereafter be loaned to Grantor by Lender or advanced under the Loan Documents, even though the aggregate amount outstanding at any time may exceed the original principal balance stated herein and in the Note; and

(iii)     the due, prompt and complete performance of each and every covenant, condition, agreement, representation, warranties and other liabilities and obligations of Grantor or any other obligor contained in the Loan Agreement, this Security Deed, the Note, and every other Loan Document.

-4-

CH01/ 12463019.5

U0013

**GRANTOR FURTHER AGREES AS FOLLOWS:**

1. **Title.** Grantor hereby represents, warrants and covenants that Grantor is the holder of fee simple title to the Property, free and clear of any liens, security interests and security titles, and encumbrances except for Permitted Exceptions, and that Grantor has legal power and authority to convey the Property. At Grantor's sole expense, Grantor shall protect, preserve and defend the Property and title to and right of possession of the Property, and the security of this Security Deed and the rights and powers of Lender created under it, against all adverse claims. Grantor shall give Lender prompt notice in writing if any claim is asserted which does or could affect any such matters, or if any action or proceeding is commenced which alleges or relates to any such claim. Lender may, at the expense of Grantor, appear in and defend any such claim, action or proceeding and any claim, action or other proceeding asserted or brought against Lender in connection with or relating to any part of the Property or this Security Deed.

2. **Effect of Extensions of Time.** If the payment, or performance of the Secured Obligations or any part thereof, is extended or varied, if the rate of interest charged under the Note is changed or if the time for payment or performance of the Secured Obligations is extended or varied, or if all or any part of any security for the payment or performance of the Secured Obligations is released, or if any person or entity liable for the payment or performance of the Secured Obligations is released, or if Lender takes other or additional security for the payment or performance of the Secured Obligations, or if Lender waives or fails to exercise any right granted in this Security Deed, or in the Note, or in any Loan Document, all persons now or at any time hereafter liable for the payment or performance of the Secured Obligations, or any part thereof, or interested in the Property, shall be deemed to have assented to such extension, variation, release, change, waiver, failure to exercise or the taking of additional security, and their liability and the lien, security interest and security title, and all provisions of this Security Deed, shall continue in full force, the right of recourse against all such persons being expressly reserved by Lender, notwithstanding such extension, variation, release, waiver, failure to exercise, or the taking of additional security.

3. **Assignment of Leases and Rents.**

(a) Grantor presently, absolutely and unconditionally assigns and transfers to Lender all of Grantor's right, title and interest in and to the Leases, the Rents and any rights and claims of any kind that Grantor may have now or in the future against any Tenant. To the fullest extent permitted by applicable law, the assignment of rents, income and other benefits contained in this Security Deed shall be fully operative without any further action on the part of either party. Lender shall be entitled, at its option, upon the occurrence of an Event of Default hereunder, to all rents, income and other benefits from the Property, whether or not Lender takes possession of such property. Such assignment and grant shall continue in effect until the Secured Obligations

-5-

have been paid and performed in full, the execution of this Security Deed constituting and evidencing the irrevocable consent of Grantor to the entry upon and taking possession of the Property by Lender pursuant to such grant, whether or not foreclosure proceedings have been instituted. Subject to the provisions of this Security Deed and provided there is no Event of Default, Lender hereby grants to Grantor a revocable license (which license shall terminate automatically and without further notice upon the occurrence of an Event of Default) to enforce the Leases and to collect the Rents as they become due (excluding, however, any lease termination, cancellation or similar payments which Grantor agrees shall be held in trust and turned over to Lender for credit to principal under the Loan). Upon revocation of such license, all Rents shall be paid directly to Lender and not through Grantor, all without the necessity of further action by Lender.

(b) Grantor hereby irrevocably appoints Lender its true and lawful attorney with full power of substitution and with full power for Lender in its own name and capacity or in the name and capacity of Grantor, from and after the occurrence of an Event of Default, to demand, collect, receive and give complete acquittance for any and all Rents, and at Lender's discretion to file any claim or take any other action or proceeding and make any settlement of any claims, either in its own name or in the name of Grantor or otherwise, which Lender may deem necessary or desirable in order to collect and enforce the payment of the Rents. Tenants of the Property are hereby expressly authorized and directed to pay any and all amounts due Grantor pursuant to the Leases to Lender or such nominee as Lender may designate in writing delivered to and received by such Tenants who are expressly relieved of any and all duty, liability or obligation to Grantor in respect of all payments so made.

(c) From and after the occurrence of an Event of Default, Lender is hereby vested with full power to use all measures, legal and equitable, deemed by it necessary or proper to collect the Rents assigned hereunder, either by itself or through a receiver, including the right of Lender or its designee to enter upon the Property, or any part thereof, with or without force and with or without process of law and take possession of all or any part of the Property together with all personal property, fixtures, documents, books, records, papers and accounts of Grantor relating thereto, and may exclude the Grantor, its agents and servants, wholly therefrom. Grantor hereby consents to the appointment of such receiver. Grantor hereby grants full power and authority to Lender to exercise all rights, privileges and powers herein granted at any and all times after service of a notice exercising the powers granted herein, without further notice to Grantor, with full power to use and apply all of the Rents herein assigned to the payment of the costs of managing and operating the Property and to any Secured Obligations or any other liability of Grantor to

-6-

CH01/ 12463019.5

00015

Lender, including but not limited to the payment of taxes, special assessments, insurance premiums, damage claims, the costs of maintaining, repairing, rebuilding and restoring buildings or other improvements or to making the same rentable, attorneys' fees, costs and expenses incurred in connection with the enforcement of this Security Deed, and to principal and interest payments due from Grantor to Lender under the Loan Agreement and the Note or this Security Deed, all in such order as Lender may determine. Lender shall be under no obligation to exercise or prosecute any of the rights or claims assigned to it hereunder or to perform or carry out any of the obligations of the lessor under any of the Leases and does not assume any of the liabilities in connection with or arising or growing out of the covenants and agreements of Grantor in the Leases, provided Lender may, at its sole option, institute any legal or equitable action which Lender in its sole discretion, deems desirable to collect any or all of the Rents.

(d) Following the occurrence of an Event of Default, Lender may perform any or all obligations of Grantor under any of the Leases or this Security Deed and take such actions as Lender deems appropriate to protect its security interest including without limitation (i) appearing in any action or proceeding affecting any of the Leases or the Property; (ii) executing new leases and modifying, terminating or canceling existing Leases; (iii) collecting, modifying and compromising any Rents payable under the Leases; (iv) enforcing any of the Leases, including, if necessary, evicting lessees; and (v) any other remedies permitted Lender under applicable law. The foregoing are in addition to the remedies afforded Lender under any of the other Loan Documents or in law or equity, by statute or otherwise, all of which rights are reserved by Lender. It is further understood that the assignment of the Leases contained in this Security Deed shall not operate to place responsibility for the control, care, management or repair of the Property, or parts thereof, upon Lender, nor shall it operate to make Lender liable for the performance of any of the terms and conditions of any of the Leases, or for any waste of the Property by any lessee under any of the Leases or any other person, or for any dangerous or defective condition of the Property or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any lessee, licensee, employee or stranger.

(e) Except to the extent caused by Lender's gross negligence or willful misconduct, Grantor hereby agrees to indemnify, hold harmless and defend Lender from and against any liability, obligation, loss, cost, expense, civil fines, penalties or damage (including attorneys' fees) incurred by Lender under the Leases until such time as Lender shall actually take possession of the Property.

-7-

CH01/ 12463019.5

(f) Nothing herein shall be construed as constituting the Lender a mortgagee in possession of the Property in the absence of Lender taking actual possession of the Property.

4. **Lender's Performance of Defaulted Acts**. In case of an Event of Default, Lender may, but need not, and whether electing to declare the whole of the Secured Obligations due and payable or not, and without waiver of any other remedy, make any payment or perform any act herein required of Grantor in this Security Deed or pursuant to any of the other Loan Documents in any form and manner deemed expedient, and may, but need not, make full or partial payments of principal or interest on prior encumbrances, if any, and purchase, discharge, compromise or settle any tax lien or other prior lien, security interest or security title, or title or claim thereof, or redeem from any tax sale or forfeiture affecting the Property or contest any tax or assessment or cure any default of landlord in any lease of the Property. All sums paid for any of the purposes authorized in this paragraph and all expenses paid or incurred in connection such purposes, including reasonable attorneys' fees, and any other sums advanced by Lender in regard to any Impositions or to protect the Property or the lien, security interest and security title, hereof, shall be so much additional Indebtedness, and shall become immediately due and payable upon demand, together with interest thereon accruing at the Default Rate until paid. Inaction of Lender shall never be considered as a waiver of any right accruing to Lender on account of any default on the part of Grantor. In addition, any costs, expenses and fees, including attorneys' fees, incurred by Lender in connection with (a) sustaining the lien, security interest and security title of this Security Deed or its priority, (b) protecting or enforcing any of Lender's rights hereunder, (c) recovering any of the Secured Obligations, (d) any litigation or proceedings affecting the Loan Agreement, the Note, this Security Deed, any of the other Loan Documents or the Property, including without limitation, bankruptcy and probate proceedings, or (e) preparing for the commencement, defense or participation in any threatened litigation or proceedings affecting the Loan Agreement, the Note, this Security Deed, any of the other Loan Documents or the Property, shall be so much additional Indebtedness, and shall become immediately due and payable by Grantor to Lender, upon demand, and with interest thereon accruing from the date of such demand until paid at the Default Rate.

5. **Lender's Reliance on Tax Bills, Etc**. Lender in making any payment hereby authorized:

(a) relating to taxes and assessments, may do so according to any bill, statement or estimate procured from the appropriate public office without inquiry into the accuracy of such bill, statement or estimate or into the validity of any tax, assessment, sale, forfeiture, tax lien or title or claim thereof; or

(b) relating to insurance premiums, may do so according to any bill or statement procured from the appropriate company without inquiry into the accuracy of such bill or statement; or

-8-

(c) for the purchase, discharge, compromise or settlement of any other prior lien, security interest or security title, may do so without inquiry as to the validity or amount of any claim for lien, security interest or security title which may be asserted.

6.  **Events of Default; Acceleration**.  Upon the occurrence of any Event of Default, then and in every such case the whole of the Secured Obligations shall, at once, at the option of Lender, become immediately due and payable without any presentment, demand, protest or notice of any kind.  Without limiting the foregoing Grantor expressly acknowledges and affirms that any Transfer that is not permitted under the Loan Documents constitutes an Event of Default which would give rise to Lender's right to accelerate the Secured Obligations.

7.  **Lender's Right to Possession in Case of Default**.  Whether or not Lender has declared the Secured Obligations to be due and payable, Lender may either in person or by agent, with or without bringing any action or proceeding, enter upon and take possession of the Property, or any part thereof, in its own name, and do any acts which it deems reasonably necessary or desirable to preserve the value, marketability or rentability of the Property, or part thereof or interest therein, increase the income therefrom or protect the security hereof and, with or without taking possession of the Property, sue for or otherwise collect the rents, issues and profits thereof, including those past due and unpaid, and apply the same in such order and manner as Lender may elect.  Without limiting the generality of the foregoing, to the extent permitted by applicable law, Lender shall have full power to: (a) cancel or terminate any Lease or sublease for any cause or on any ground which would entitle Grantor to cancel such Lease or sublease; (b) elect to disaffirm any Lease or sublease which is then subordinate to the lien hereof; (c) extend or modify any then existing Leases and to enter into new Leases, which extensions, modifications and Leases may provide for terms to expire, or for options to lessees to extend or renew terms to expire, beyond the Maturity Date and beyond the date of the issuance of a deed or deeds to a purchaser or purchasers at a foreclosure sale, it being understood and agreed that any such Leases, and the options or other such provisions to be contained therein, shall be binding upon Grantor and all persons whose interests in the Property are subject to the lien of this Security Deed and upon the purchaser or purchasers at any foreclosure sale, notwithstanding any redemption from sale (if applicable), discharge of the Secured Obligations, satisfaction of any foreclosure judgment, or issuance of any certificate of sale or deed to any purchaser; (d) make any repairs, renewals, replacements, alterations, additions, betterments and improvements to the Property as Lender deems are necessary; (e) insure and reinsure the Property and all risks incidental to Lender's possession, operation and management thereof; and (f) receive all of such Rents.  The entering upon and taking possession of the Property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any Event of Default or invalidate any act done in connection with such Event of Default and, notwithstanding the continuance in possession of the Property or the collection, receipt and application of rents, issues or profits, Lender shall be entitled to exercise every right provided for in any of the Loan Documents or by law upon occurrence

-9-

CH01/ 12463019.5

of and during the continuance of any Event of Default, including the right to exercise the power of sale. If Grantor shall for any reason fail to surrender or deliver the Property or any part thereof after such demand by Lender, Lender may obtain a judgment or decree conferring upon Lender the right to immediate possession or requiring Grantor to deliver immediate possession of the Property to Lender, and Grantor hereby specifically covenants and agrees that Grantor will not oppose, contest or otherwise hinder or delay Lender in any action or proceeding by Lender to obtain such judgment or decree. Grantor will pay to Lender, upon demand, all reasonable expenses of obtaining such judgment or decree, including reasonable compensation to Lender, its attorneys and agents, and all such expenses and compensation shall, until paid, become part of the Indebtedness and shall be secured by this Security Deed. Upon every such entering upon or taking of possession, Lender may hold, store, use, operate, manage and control the Property and conduct the business thereof. Lender may collect and receive all the income, rents, issues, profits and revenues from the Property, including those past due as well as those accruing thereafter, and Lender may apply any monies and proceeds received by Lender, in whatever order or priority Lender in its sole discretion may determine, to the payment of (i) all expenses of taking, holding, managing and operating the Property (including compensation for the services of all persons employed for such purposes); (ii) the cost of all such maintenance, repairs, renewals, replacements, additions, betterments, improvements, purchases and acquisitions; (iii) the cost of insurance; (iv) such taxes, assessments and other similar charges as Lender may at its option pay; (v) other proper charges upon the Property or any part thereof; (vi) the reasonable compensation, expenses and disbursements of the attorneys and agents of Lender; and (vii) the Indebtedness. Anything in this Security Deed to the contrary notwithstanding, Lender shall not be obligated to discharge or perform the duties of a landlord to any tenant or incur any liability as the result of any exercise by Lender of its rights under this Security Deed, and Lender shall be liable to account only for the rents, incomes, issues, profits and revenues actually received by Lender. In the event that all Events of Default shall be cured, and as a result thereof Lender surrenders possession of the Property to Grantor, the same right of taking possession shall continue to exist if any subsequent Event of Default shall occur.

8. **Foreclosure Sale**. Lender may sell and dispose of the Property at public auction, at the usual place for conducting sales at the courthouse in the county where the Property or any part thereof may be located, to the highest bidder for cash, first advertising the time, terms and place of such sale by publishing a notice thereof once a week for four consecutive weeks immediately preceding the date of such sale (without regard to the actual number of days) in a newspaper in which sheriff's advertisements are published in said county, all other notice being hereby waived by Grantor; and Lender may thereupon execute and deliver to the purchaser at said sale a sufficient conveyance of the Property in fee simple, which conveyance may contain recitals as to the happening of the default upon which the execution of the power of sale, herein granted, depends, and said recitals shall be presumptive evidence that all preliminary acts prerequisite to said sale and deed were in all things duly complied with; and Lender may bid and purchase at such sale; and Grantor

-10-

hereby constitutes and appoints Lender the agent and attorney-in-fact to make such recitals, sale and conveyance, and all of the acts of such attorney-in-fact are hereby ratified, and Grantor agrees that such recitals shall be binding and conclusive upon Grantor and that the conveyance to be made by Lender (and in the event of a deed in lieu of foreclosure, then as to such conveyance) shall be effectual to bar all right, title and interest, equity of redemption, including all statutory redemption, homestead, dower, curtesy and all other exemptions of Grantor, or its successors in interest, in and to the Property; and Lender shall collect the proceeds of such sale, applying such proceeds as provided in Section 10 below (in the event of deficiency, Grantor shall immediately on demand from Lender pay over to Lender, or its nominee, such deficiency); and Grantor agrees that in case of a sale, as herein provided, Grantor or any person in possession under Grantor shall then become and be tenants holding over, and shall forthwith deliver possession to the purchaser at such sale, or be summarily dispossessed in accordance with the provisions of law applicable to tenants holding over; the power and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise, and are in addition to any and all other remedies which Lender may have at law or in equity. If an Event of Default shall have occurred, Lender may, in addition to and not in abrogation of the rights in this Security Deed, either with or without entry or taking possession as herein provided or otherwise, proceed by a suit or suits in law or in equity or by any other appropriate proceeding or remedy (i) to enforce payment and performance of the Secured Obligations and (ii) to pursue any other remedy available to it, all as Lender at its sole discretion may elect.

9. **Expenses.** Following the occurrence of an Event of Default, Grantor covenants and agrees to pay to Lender all reasonable expenditures and expenses which may be paid or incurred by or on behalf of Lender for attorneys' fees and other costs and expenses, including without limitation the cost of procuring all such abstracts of title, title searches and examinations, title insurance policies, certificates of title, and similar data and assurances with respect to title as Lender may deem reasonably necessary either to exercise the power of sale granted herein or prosecute such suit or to evidence to bidders at any sale which may be had pursuant to this Security Deed the true condition of the title to or the value of the Property. All expenditures and expenses of the nature in this Section mentioned, and such expenses and fees as may be incurred in the protection of the Property and the maintenance of the lien, security interest and security title of this Security Deed, including the reasonable fees of any attorneys employed by Lender in any litigation or proceeding affecting this Security Deed, or the Property, including probate and bankruptcy proceedings, or in preparations for the commencement or defense of any proceeding or threatened suit or proceeding, shall be immediately due and payable by Grantor, with interest thereon at the Default Rate and shall be secured by this Security Deed.

10. **Application of Proceeds.** The proceeds of any foreclosure sale of the Property shall be distributed and applied in the following order or priority; first, on account of all reasonable costs and expenses incident to the foreclosure proceedings, including all such items as are mentioned in the preceding Sections; second, all other items which under the terms hereof constitute indebtedness additional to that evidenced by the Loan Agreement,

-11-

CH01/ 12463019.5

with interest thereon as herein provided; third, all principal and interest remaining unpaid under the Loan Agreement; and fourth, any overage to Grantor, or to the person or entity lawfully entitled thereto.

11. **Appointment of Receiver**. Upon the occurrence of an Event of Default, Lender, upon application to a court of competent jurisdiction, shall be entitled as a matter of strict right to the appointment of a receiver of the Property, whether or not Lender shall simultaneously exercise any of its other rights and remedies hereunder. Such appointment may be made without notice, without giving bond, without regard to the solvency or insolvency of Grantor or any other party liable for payment of the Indebtedness at the time of application for such receiver and without regard to the then value or occupancy of the Property, and Lender or any other holder hereof may be appointed as such receiver. Grantor hereby irrevocably consents to the appointment of such receiver and waives all notice thereof. Such receiver shall have the power to collect the rents, income, issues and profits of the Property and to apply the same in whole or in part to the reduction of the Indebtedness, and to extend or modify any then existing leases and to make new leases, which extensions, modifications and new leases may provide for terms to expire, or for options to lessees to extend or renew terms to expire, beyond the maturity date of the Indebtedness and beyond the date of the issuance of a deed or deeds to a purchaser or purchasers at a foreclosure sale, it being understood and agreed that any such leases, and the options or other such provisions to be contained therein, shall be binding upon Grantor and all persons whose interests in the Property are subject to this Security Deed. Such receiver shall have all other powers permitted under State law, which may be necessary or are usual in such cases for the protection, possession, control, management and operation of the Property. Grantor will pay to Lender, upon demand, all expenses, including receivers' fees, attorneys' fees, costs and agent's compensation, incurred pursuant to the provisions of the preceding Sections and any such amounts paid by Lender shall be added to the Indebtedness and shall be secured by this Security Deed.

12. **Waiver of Homestead**. Grantor hereby waives and renounces all homestead and exemption rights provided for by the Constitution and the laws of the United States and of any state, in and to the Property as against the collection of the Indebtedness and enforcement of the Obligations, or any part hereof.

13. Intentionally deleted.

14. **Rights Cumulative; Modification**. Each right, power and remedy conferred upon Lender in this Security Deed is cumulative and in addition to every other right, power or remedy, express or implied, given now or hereafter existing, at law or in equity, and each and every right, power and remedy set forth in this Security Deed or any other Loan Document, or otherwise so existing, may be exercised from time to time as often and in such order as may be deemed expedient by Lender, and the exercise or the beginning of the exercise of one right, power or remedy shall not be a waiver of the right to exercise at the same time or thereafter any other right, power or remedy, and no delay or omission of

-12-

CH01/ 12463019.5

Lender in the exercise of any right, power or remedy accruing hereunder or arising otherwise shall impair any such right, power or remedy, or be construed to be a waiver of any default or acquiescence therein. This Security Deed cannot be waived, changed, discharged or terminated orally, but only by an instrument in writing signed by the party against whom enforcement of any waiver, change, discharge or termination is sought.

### 15. Compliance with Lien Laws.

(a) If any provision in this Security Deed shall be inconsistent with any provision of the laws of the State applicable to security deeds (the "**Lien Laws**"), the provisions of the Lien Laws shall take precedence over the provisions of this Security Deed, but shall not invalidate or render unenforceable any other provision of this Security Deed that can be construed in a manner consistent with the Lien Laws.

(b) If any provision of this Security Deed shall grant to Lender (including Lender acting as a lender-in-possession) or a receiver any powers, rights or remedies which are more limited than the powers, rights or remedies that would otherwise be vested in Lender or in such receiver under the Lien Laws in the absence of such provision, Lender and such receiver shall be vested with the powers, rights and remedies granted in the Lien Laws to the full extent permitted by law.

### 16. Lender's Right of Inspection.

Lender shall have the right to inspect the Property at all reasonable times and access thereto shall be permitted for that purpose. Without limiting the generality of the foregoing, if Lender deems it reasonably necessary, Lender (by its officers, managers, employees and agents) at any time and from time to time, either prior to or after the occurrence of an Event of Default hereunder for any reason in its reasonable discretion, may contract for the services of persons (the "**Site Reviewers**") to perform environmental assessments (the "**Site Assessment**") on the Property for the purposes of determining whether there exists on or near the Property any environmental conditions which could reasonably be expected to result in liability, cost or expense to the owner, occupier or operator of the Property arising under any state, federal or local law, rule or regulation relating to Hazardous Substances. The Site Assessments may be performed at any time or times, upon reasonable notice, and under reasonable conditions established by Grantor which do not impede the performance of the Site Assessments. The Site Reviewers are hereby authorized to enter upon the Property for such purposes. The Site Reviewers are further authorized to perform both above and below the ground testing for the presence of Hazardous Substances on the Property and such other tests on the Property as may be appropriate to conduct the Site Assessments in the reasonable opinion of the Site Reviewers. Grantor will supply to the Site Reviewers such historical and operation information regarding the Property as may be reasonably requested by the Site Reviewers to facilitate the Site Assessments and will make available for meetings with the Site Reviewers appropriate personnel having knowledge of such matters. On request, Lender shall make the results of

-13-

CH01/ 12463019.5

such Site Assessments fully available to Grantor, and if no Event of Default then exists, Grantor may at its election participate under reasonable procedures in the direction of such Site Assessments and the descriptions of Tasks of the Site Reviewers. The cost of performing such Site Assessments shall be paid by Grantor upon demand of Lender and such obligations shall be Secured Obligations.

17. **Condemnation**. Grantor hereby assigns, transfers and sets over to Lender the entire proceeds of any award or any claim for damages for any of the Property taken or damaged under the power of eminent domain or by condemnation which proceeds shall be treated as Loss Recoveries under the Loan Agreement. Grantor agrees to execute and deliver, from time to time, such further instruments as may be requested by Lender to confirm such assignment to Lender of any such award or payment.

18. **Cancellation Upon Payment and Discharge of Grantor's Obligations**. Lender shall cancel and surrender this Security Deed and the lien, security interest and security title hereof by proper instrument upon payment and discharge of all of the Secured Obligations including any prepayment charges provided for herein or in the Note and payment of a reasonable fee to Lender for the execution of such release together with all reasonable expenses incurred by Lender in connection with the execution of such release.

19. **Waiver of Defense**. No action for the enforcement of the lien, security interest and security title, or any provision hereof, shall be subject to any defense which would not be good and available to the party interposing same in an action at law upon the Note hereby secured.

20. **Waiver of Statutory Rights**. To the extent permitted under the Lien Laws, Grantor shall not, and will not, apply for, avail itself of, insist upon or plead or in any manner claim or take advantage of any appraisement, homestead, valuation, stay, extension or exemption laws, or any so-called "**Moratorium Laws,**" now existing or hereafter enacted, in order to prevent or hinder the enforcement or foreclosure of this Security Deed, but hereby waives the benefit of such laws. Grantor, for itself and all who may claim through or under Grantor, waives any and all right to have the property and estates comprising the Property marshaled upon any foreclosure of the lien, security interest and security title hereof and agrees that any court having jurisdiction to foreclose such lien, security interest and security title may order the Property sold as an entirety. Grantor hereby expressly waives any and all rights of reinstatement and redemption, if any, from sale pursuant to a Foreclosure of this Security Deed on behalf of Grantor, and each and every person claiming by, through or under Grantor.

21. **Financing Statement**. This Security Deed also constitutes a financing statement for the purpose of Section 9-502 of the Code and shall constitute a "fixture filing" under such statutes.

(a) The Debtor is the Grantor hereunder.

-14-

(b) The Secured Party is the Lender hereunder.

(c) This financing statement covers the Collateral that is related to the Real Property which includes Goods which are or are to become fixtures on the Real Property.

(d) Grantor is the record owner of the Real Property.

(e) Grantor's organizational identification number is L04000069762.

22. **Future Advances**. This Security Deed is given to secure not only present indebtedness, but also future advances of the Loan, whether or not such future advances are obligatory or at the option of Lender, to the same extent as if such future advances were made on the date of the execution of this Security Deed. The total amount of indebtedness that may be so secured may decrease or increase from time to time, but all indebtedness secured hereby shall in no event exceed the limitation, if any, set forth in the granting clauses of this Security Deed.

23. **Miscellaneous**.

(a) **Successors and Assigns**. This Security Deed and all provisions hereof shall extend to and be binding upon Grantor and its successors, grantees and assigns, any subsequent owner or owners of the Property and all persons claiming under or through Grantor (but this clause shall not be construed as constituting the consent by Lender to the transfer of any interest in the Property), and the word **"Grantor"** when used herein shall include all such persons and all persons liable for the payment of or performance of the Secured Obligations or any part thereof, whether or not such persons shall have executed the Note or this Security Deed. The word **"Lender"**, when used herein, shall include the successors and assigns of Lender named herein, and the holder or holders, from time to time, of the Note.

(b) **Invalidity of Provisions**. In the event one or more of the provisions contained in this Security Deed or in any other Loan Document shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall, at the option of Lender, not affect any other provision of this Security Deed and this Security Deed shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein or therein.

(c) **Governing Law**. The validity and interpretation of this Security Deed and of all other documents evidencing or securing the Secured Obligations shall be construed in accordance with the laws of the State of Illinois, except that the Lien Laws shall govern any question regarding the

-15-

creation, perfection or enforcement of the liens, security interests and security titles granted Lender under this Security Deed.

(d) **Rights of Tenants**.  Lender shall have the right and option to commence a Foreclosure subject to the rights of any tenant or tenants of the Property.  The failure to join any such tenant or tenants as party defendant or defendants in any Foreclosure to foreclose their rights shall not be asserted by Grantor as a defense in any civil action instituted for satisfaction of the Secured Obligations, or any part thereof, or any deficiency remaining unpaid after Foreclosure and sale of the Property, any statute or rule of law at any time existing to the contrary notwithstanding.  Tenants and other transferees of interests in the Property, whether directly or indirectly, shall be subject to all of the terms of this Security Deed and all of the other Loan Documents, which terms include a right in favor of Lender to accelerate the Secured Obligations upon any Transfer that is not permitted by Lender under the Loan Documents.

(e) **Option of Lender to Subordinate**.  At the option of Lender, this Security Deed shall become subject and subordinate, in whole or in part (but not with respect to priority of entitlement to insurance proceeds or any award in condemnation) to any or all Leases upon the execution by Lender and recording or registration thereof, at any time hereafter, in the appropriate recording office for the recording of instruments affecting the Property, of a unilateral declaration to that effect.

(f) **Property Management Agreement**.  Any property management agreement hereafter entered into by Grantor shall, to the extent enforceable under the Lien Laws, be subject and subordinate to the lien, security interest and security title of this Security Deed and Lender may terminate such agreement at any time after the occurrence of an Event of Default.  Such property management agreement or a short form thereof, evidencing the foregoing subordination, shall, at Lender's request, be recorded with the appropriate recording office for the Property.

(g) **Subrogation**.  To the extent that Lender, on or after the date hereof, pays any sum due under any provision of law or any instrument or document creating any lien, security interest or security title prior or superior to the lien, security interest and security title of this Security Deed, or Grantor or any other person pays any such sum with the proceeds of the Loan, Lender shall have and be entitled to a lien, security interest and security title on the Property equal in priority to the lien, security interest or security title discharged, and Lender shall be subrogated to, and receive and enjoy all rights and liens, security interests and security titles possessed, held or enjoyed by, the holder of such lien, security interest or security title, which shall remain in existence and benefit Lender in securing the Secured Obligations.  Lender

-16-

00025

shall be subrogated, notwithstanding their release of record, to the lien, security interest or security title of all security deeds, mortgages, trust deeds, superior titles, vendors' liens, liens, security interests and security titles, charges, encumbrances, rights and equities on the Property, to the extent that any obligation under any thereof is directly or indirectly paid or discharged with proceeds of disbursements or advances under the Note.

(h) **Notices**. All Notices required or appropriate under this Security Deed shall be given in compliance with provisions of the Loan Agreement governing the giving of Notices.

24. **Waiver of Jury Trial**. GRANTOR AND LENDER, BY ITS ACCEPTANCE OF THIS DEED, HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE THIS DEED OR BASED UPON, OR ARISING OUT OF, THE SUBJECT MATTER OF THIS DEED. THIS WAIVER IS KNOWINGLY, INTENTIONALLY AND VOLUNTARILY MADE BY GRANTOR AND LENDER, AND GRANTOR ACKNOWLEDGES THAT NEITHER LENDER NOR ANY PERSON ACTING ON BEHALF OF LENDER HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR HAS TAKEN ANY ACTIONS WHICH IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. GRANTOR AND LENDER EACH ACKNOWLEDGE THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT EACH OF THEM HAS ALREADY RELIED ON THIS WAIVER IN ENTERING INTO THIS DEED AND THAT EACH OF THEM WILL CONTINUE TO RELY ON THIS WAIVER IN THEIR RELATED FURTHER DEALINGS.

25. **Construction Mortgage**. The Secured Obligations include indebtedness incurred for the construction of an improvement upon the Land and this Security Deed is intended to be a "construction mortgage" as that term is used in the Uniform Commercial Code, as adopted in the State.

26. **Observance of Lease Assignment**. Grantor acknowledges that, concurrently herewith, Grantor has executed and delivered to Lender, as additional security for payment and performance of the Secured Obligations, a separate assignment of rents and leases ("**Assignment of Rents**") pursuant to which Grantor has assigned to Lender interests in the Leases and the rents and income from the Property. All of the provisions of the Assignment of Rents are hereby incorporated herein as though fully set forth in the text of this Security Deed. Grantor agrees to abide by all of the provisions of the Assignment of Rents which shall be deemed to be in addition to, and not in substitution of, any of the terms of this Security Deed.

-17-

27. <u>Compliance with State Specific Laws</u>.

(a) Grantor represents and warrants to Lender that no portion of the Property is used as a dwelling place by Grantor at the time this Security Deed is entered into, and, accordingly, the notice requirement of Official Code of Georgia Annotated Section 44-14-162.2 shall not be applicable to any exercise of the power of sale contained in this Security Deed.

(b) Time is of the essence of this Security Deed.

(c) The interest of Lender hereunder and all the Secured Obligations arise from a "commercial transaction" within the meaning of Official Code of Georgia Annotated § 44-14-260(l). Accordingly, pursuant to Official Code of Georgia Annotated §44-14-263, Grantor waives any and all rights which Grantor may have to notice prior to seizure by Lender of any interest in personal property of Grantor which constitutes part of the Property, whether such seizure is by writ of possession or otherwise, and also waives the requirement for any bond in connection with any writ of immediate possession sought by Grantor.

(d) Grantor agrees to indemnify, defend and hold Lender harmless from and against any claim that any Georgia Intangible Recording taxes are due and payable in connection with the Loan or this Security Deed.

(e) <u>Attorneys' Fees</u>. Notwithstanding any other terms or provisions of this Deed or any other Loan Document, in any instance where Grantor is obligated under the terms of this Deed or any other Loan Document that is governed by the laws of the State of Georgia to pay any attorneys fees, such attorneys fees shall be limited to the reasonable and documented actual attorneys fees and expenses paid or incurred by Grantee to outside or inside counsel charged at the standard hourly rates of the attorneys handling the subject matter, provided, however, that any attorneys' fees paid or incurred during or in connection with a default under any of the Loan Documents shall not be subject to challenge by Grantor for being unreasonable, but shall still be limited to the documented actual attorneys and expenses paid or incurred by Grantee to outside or inside counsel charged at the standard hourly rates of the attorneys handling the subject matter. In no event shall "attorneys fees", "reasonable attorneys fees" or similar phrases, as used herein or in the other Loan Documents governed by the laws of the State of Georgia, be construed to mean the statutory attorneys fees specified in O.L.G.A. §13-1-11, it being the intent of the parties that the Lender shall only be able to collect attorneys' fees actually incurred rather than the statutory amount.

**[The balance of this page is intentionally blank; signature page follows.]**

-18-

*To the maximum extent permitted by law*

28. **WAIVER OF DUE PROCESS**. GRANTOR HEREBY VOLUNTARILY, INTELLIGENTLY AND KNOWINGLY WAIVES ANY AND ALL RIGHTS OF GRANTOR TO DUE PROCESS OF LAW IN CONNECTION WITH THE SECURED OBLIGATIONS, WHICH RIGHTS MAY INCLUDE PRIOR NOTICE AND A PRIOR JUDICIAL HEARING IN CONNECTION WITH THE EXERCISE OF ANY AND ALL RIGHTS AND REMEDIES GRANTED TO AGENT PURSUANT TO THE TERMS HEREOF, SAID REMEDIES INCLUDING, BUT NOT LIMITED TO, SELLING THE REAL PROPERTY CONVEYED HEREBY AT PUBLIC AUCTION AT THE USUAL PLACE FOR CONDUCTING SALES AT THE COURTHOUSE IN THE COUNTY WHERE SUCH PROPERTY OR ANY PART THEREOF MAY BE LOCATED TO THE HIGHEST BIDDER FOR CASH AFTER FIRST ADVERTISING THE TIME, TERMS AND PLACE OF SUCH SALE BY PUBLISHING A NOTICE THEREOF, ONCE A WEEK FOR FOUR CONSECUTIVE WEEKS, IN A NEWSPAPER IN WHICH SHERIFF'S ADVERTISEMENTS ARE PUBLISHED IN SAID COUNTY, ALL OTHER NOTICE HAVING BEEN WAIVED BY GRANTOR.

IN WITNESS WHEREOF, Grantor has caused this Security Deed to be duly executed, UNDER SEAL, and delivered as of the date first above written.

Signed, sealed and
delivered in the presence of:

Print Name:
Unofficial Witness

Notary Public

Commission Expiration
Date: April 5, 2007

[Affix Notarial Seal]

TRACY THONG
COMM. #1419276
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
MY COMM. EXPIRES APRIL 5, 2007

**GRANTOR:**

**THE LANDINGS FLORIDA, LLC,**
a Florida limited liability company

By:    The Landings Florida Member, LLC,
a Delaware limited liability company,
Its Sole Member and Manager

By:    Spinnaker/Regatta V, LLC,
a Washington limited liability company,
Its Sole Member and Manager

By:    CVI/Spinnaker/Regatta V, Inc.,
a Washington corporation,
Its Manager

By:
Name: Richard Nathan
Title:   President and Sole Director

# EXHIBIT A

## LEGAL DESCRIPTION

TRACT 1

ALL THAT TRACT OR PARCEL OF LAND lying and being in Land Lots 282 and 305 of the 6th District of Gwinnett County, Georgia, being more particularly described as follows:

BEGINNING at an iron pin found marking the corner common to Land Lots 281, 282, 305 and 306, said District and County, and running thence N 30° 23' 54" W, along the line common to said Land Lots 305 and 306, a distance of 422.71 feet to a point; thence N 34° 32' 12" W, along the line common to said Land Lots 305 and 306, a distance of 456.00 feet to a point; thence S 67° 10' 12" E, a distance of 119.25 feet to a point; thence N 23° 38' 00" E a distance of 190.00 feet to a point; thence N 44° 43' 00" E a distance of 116.00 feet to a point; thence S 46° 08' 05" E a distance of 263.52 feet to a point; thence N 79° 55' 00" E a distance of 208.00 feet to a point; thence N 14° 48' 00" E a distance of 164.00 feet to a point; thence N 44° 00' 00" E a distance of 59.00 feet to a point; thence N 84° 04' 00" E a distance of 57.00 feet to a point; thence S 57° 02' 00" E a distance of 53.00 feet to a point; thence S 75° 16' 39" E a distance of 134.70 feet to a point; thence N 61° 30' 00" E a distance of 54.00 feet to a point; thence N 83° 06' 00" E a distance of 36.00 feet to a point; thence S 62° 48' 16" E a distance of 149.00 feet to a point; thence S 51° 58' 09" W a distance of 47.88 feet to a point; thence S 02° 42' 00" E a distance of 50.00 feet to a point; thence S 38° 48' 00" E a distance of 160.00 feet to a point; thence S 73° 47' 00" E a distance of 90.00 feet to a point; thence S 76° 28' 00" E a distance of 189.00 feet to a point; thence N 46° 14' 00" E a distance of 38.00 feet to a point; thence N 20° 31' 00" E a distance of 21.00 feet to a point; thence N 49° 37' 40" E a distance of 288.98 feet to a point; thence N 17° 57' 00" E a distance of 332.00 feet to a point; thence N 65° 39' 00" E a distance of 121.00 feet to a point; thence S 16° 11' 00" W a distance of 148.00 feet to a point; thence S 73° 49' 00" E a distance of 198.00 feet to a point; thence N 16° 11' 00" E a distance of 155.00 feet to a point; thence N 78° 39' 00" E a distance of 42.00 feet to a point; thence S 07° 00' 00" E a distance of 127.00 feet to a point; thence S 72° 57' 17" E a distance of 131.25 feet to a point on the northwestern right-of-way line of Peachtree Corners West (a 100 foot right-of-way); thence S 16° 27' 41" W, along said northwestern right-of-way line of Peachtree Corners West, a distance of 608.00 feet, more or less, to the point of intersection of said right-of-way line with the centerline of Crooked Creek; thence in a generally northwesterly direction, along said centerline of Crooked Creek, and following the meanderings thereof, a distance of 592.00 feet, more or less, to the point of intersection of the centerline of said creek with the line common to said Land Lots 282 and 305; thence S 58° 50' 02" W, along said line common to Land Lots 282 and 305, a distance of 1,462.00 feet, more or less, to the iron pin found at the POINT OF BEGINNING.

TRACT 2

ALL THAT TRACT OR PARCEL OF LAND lying and being in Land Lots 282 and 305 of the 6th District of Gwinnett County, Georgia, being more particularly described as follows:

TO FIND THE TRUE POINT OF BEGINNING, begin at an iron pin found marking the corner common to Land Lots 281, 282, 305 and 306, said District and County, and running thence N 30° 23' 54" W, along the line common to said Land Lots 305 and 306, a distance of 422.71 feet to a point; thence N 34° 32' 12" W, along the line common to said Land Lots 305 and 306, a distance of 456.00 feet to a point, said point marking the TRUE POINT OF BEGINNING; FROM SAID TRUE POINT OF BEGINNING AS THUS ESTABLISHED, running thence N 34° 32' 12" W, along said line common to Land Lots 305 and 306, a distance of 491.78 feet to an iron pin found; thence N 59° 22' 15" E a distance of 1,683.24 feet to an iron pin found; thence S 31° 09' 38" E a distance of 350.58 feet to an iron pin found; thence S 31° 00' 33" E a distance of 586.68 feet to an iron pin found; thence N 58° 11' 41" E a distance of 385.16 feet to an iron pin found;

thence N 17° 02' 50" E a distance of 305.00 feet to an iron pin set; thence N 00° 20' 57" E a distance of 45.12 feet to an iron pin found; thence S 71° 48' 28" E a distance of 511.13 feet to an iron pin set on the northwestern right-of-way line of Peachtree Corners West (a 100 foot right-of-way); thence in a southwesterly direction, along said northwestern right-of-way line of Peachtree Corners West, the following courses and distances: along the arc of a 2,200.00 foot radius curve, an arc distance of 461.36 feet to a point (said arc being subtended by a chord lying to the southeast of said arc and bearing S 22° 28' 09" W a distance of 460.51 feet); and S 16° 27' 41" W a distance of 37.00 feet to a point; thence N 72° 57' 17" W a distance of 131.25 feet to a point; thence N 07° 00' 00" W a distance of 127.00 feet to a point; thence S 78° 39' 00" W a distance of 42.00 feet to a point; thence S 16° 11' 00" W a distance of 155.00 feet to a point; thence N 73° 49' 00" W a distance of 198.00 feet to a point; thence N 16° 11' 00" E a distance of 148.00 feet to a point; thence S 65° 39' 00" W a distance of 121.00 feet to a point; thence S 17° 57' 00" W a distance of 332.00 feet to a point; thence S 49° 37' 40" W a distance of 288.98 feet to a point; thence S 20° 31' 00" W a distance of 21.00 feet to a point; thence S 46° 14' 00" W a distance of 38.00 feet to a point; thence S 76° 28' 00" W a distance of 189.00 feet to a point; thence N 73° 47' 00" W a distance of 90.00 feet to a point; thence N 38° 48' 00" W a distance of 160.00 feet to a point; thence N 02° 42' 00" W a distance of 50.00 feet to a point; thence N 51° 58' 09" E a distance of 47.88 feet to a point; thence N 62° 48' 16" W a distance of 149.00 feet to a point; thence S 83° 06' 00" W a distance of 36.00 feet to a point; thence S 61° 30' 00" W a distance of 54.00 feet to a point; thence N 75° 16' 39" W a distance of 134.70 feet to a point; thence N 57° 02' 00" W a distance of 53.00 to a point; thence S 84° 04' 00" W a distance of 57.00 feet to a point; thence S 44° 00' 00" W a distance of 59.00 feet to a point; thence S 14° 48' 00" W a distance of 164.00 feet to a point; thence S 79° 55' 00" W a distance of 208.00 feet to a point; thence N 46° 08' 05" W a distance of 263.52 feet to a point; thence S 44° 43' 00" W a distance of 116.00 feet to a point; thence S 23° 38' 00" W a distance of 190.00 feet to a point; thence N 67° 10' 12" W a distance of 119.25 feet to the TRUE POINT OF BEGINNING. Said Tract containing 39.434 acres.

With respect to TRACT 1 AND TRACT 2

TOGETHER WITH rights created in that certain Cross-Easement Agreement between Peachtree Associates, an Illinois limited partnership, and Peachtree Investors, an Illinois limited partnership, dated June 12, 1986, recorded at Deed Book 3600, page 218, Gwinnett County, Georgia Records (it being intended that said Cross-Easement Agreement not be terminated by merger by reason of the conveyance of all property encumbered thereby to the same entity).

Tax Map Parcel #'s 6 305 9 and 6 305 11

Street Address of Real Estate: 3655 Westchase Village Lane, Norcross, Georgia

-21-

CH01/ 12463019.5