**JUDGE NORGLE**
**MAGISTRATE JUDGE ASHMAN**

**08 C 1129**

# EXHIBIT D

# ENVIRONMENTAL INDEMNITY AGREEMENT

This Environmental Indemnity Agreement (this "**Agreement**"), dated February 28, 2006, is made by THE LANDINGS FLORIDA, LLC, a Florida limited liability company ("**Borrower**") and RICHARD J. NATHAN, individually ("**Guarantor**") (Borrower and Guarantor are collectively "**Indemnitors**") to and in favor of ORIX REAL ESTATE CAPITAL, INC. and its successors and assigns ("**Lender**") pursuant to that certain Loan and Security Agreement between Lender and Borrower, dated of even date (the "**Loan Agreement**"). All capitalized terms used in this Agreement, not otherwise defined herein, shall have the meaning given them in the Loan Agreement.

For good and valuable consideration, and with the intent that Lender rely on the terms of this Agreement in making the Loan, Indemnitors certify, represent, warrant, covenants and agree as follows:

1. **Representations and Warranties**. Guarantor hereby makes, as if fully set forth herein, each of the representations and warranties set forth in Section 4.1.4 of the Loan Agreement.

2. **Indemnity**. Notwithstanding any exculpation or other provisions in any of the Loan Documents to the contrary, Indemnitors shall protect, indemnify and hold harmless Lender and its directors, officers, employees, agents, successors and assigns (collectively, the "**Indemnified Parties**") from and against any and all claims, actions, causes or action, proceedings losses, damages, costs, expenses, fines, penalties and liabilities (including without limitation reasonable attorneys' fees and costs) directly or indirectly arising out of or attributable to in whole or in part any of the following (collectively, the "**Indemnity Obligations**"): (a) the failure of Borrower to fully perform all of its obligations under the Loan Documents (including this Agreement) relating to Hazardous Substances or Environmental Laws; (b) the installation, use, generation, manufacture, production, storage, release, threatened release, discharge, disposal or presence of a Hazardous Substance on, under or about the Property, whether such release or other occurrence occurred prior to or during the term of the Loan or otherwise; (c) the installation, maintenance or removal of any underground storage tanks at, in, on or under the Property; (d) any personal injury (including wrongful death) or property damage (real or personal) arising out of or related to any Hazardous Substances or underground storage tanks in, on, under, over, from or affecting the Property; (e) any lawsuit brought or threatened, settlement reached, or government hearing, investigation, inquiry, proceeding or order relating to any Hazardous Substances or underground storage tanks in, on, under, over, from or affecting the Property; (f) any violation of laws, orders, regulations, requirements or demands of governmental authorities which are based upon or in any way related to any such Hazardous Substances or underground storage tanks in, on, under, over, from or affecting the Property; (g) any activity by any Indemnitor, any person or party affiliated with any Indemnitor, or any tenant or other user of the Property in connection with any actual, proposed or threatened use, treatment, storage, holding, existence, disposition or other release, generation, production, manufacturing, processing, refining, control, management, abatement, removal, handling, transfer or transportation to or from the Property of any Hazardous Substances at any time located in, under, on or above the Property; (h) any activity by any Indemnitor, any person or party affiliated with any Indemnitor, or any tenant or other user of the Property in connection

with any actual or proposed Remedial Work at any time with respect to the Property, whether or not such Remedial Work is voluntary or pursuant to court or administrative order; (i) any past or present non-compliance or violations of any Environmental Laws (or permits issued pursuant to any Environmental Law) in connection with the Property or operations thereon; or (j) any misrepresentation or inaccuracy in any representation or warranty or material breach or failure to perform any covenants or other obligations pursuant to this Agreement, the Loan Agreement or the other Loan Documents in relation to Hazardous Substances and/or Environmental Laws. The foregoing indemnification obligations of Indemnitors shall include, without limitation: (i) all foreseeable and unforeseeable damages including consequential damages; (ii) the costs of any required or necessary repair, cleanup or detoxification of the Property; (iii) the preparation and implementation of any closure, remedial or other required plans; and (iv) any diminution in value to the Property caused by the presence or release of any Hazardous Substance. This Agreement and all of Indemnitors' obligations and indemnities hereunder shall survive the repayment of the Loan and the satisfaction, release or extinguishment of the lien of the Mortgage or any transfer of the Property to Lender, any Affiliate of Lender or any successor or assign of Lender. Lender shall have the right to approve any counsel selected to defend Lender or other Indemnified Parties hereunder. Notwithstanding the foregoing, Indemnitors shall not indemnify Lender to the extent such Indemnity Obligations arise solely from Hazardous Substances which first exist on the Property following the date on which the Lender takes title to the Property, whether by foreclosure of the Mortgage, deed-in-lieu thereof or otherwise; provided Indemnitors shall have the burden of proving such Hazardous Substances were not already affecting the Property on such date.

        3.     **Remedial Work**. Borrower shall, and Guarantor shall cause Borrower to, commence and thereafter diligently prosecute to completion all Remedial Work (hereinafter defined) in conformance with the requirements and standards of Applicable Law and good commercial practice. To the extent Applicable Laws do not require earlier performance, Borrower shall commence the Remedial Work within thirty (30) days of Lender's written demand. All Remedial Work shall be performed by contractors reasonably approved in advance by Lender and under the supervision of a consulting engineer approved in advance by Lender. All costs and expenses of such Remedial Work, including without limitation the reasonable fees and expenses of Lender's counsel incurred in connection with monitoring or reviewing the Remedial Work, shall be paid by Borrower. If Borrower fails or neglects to timely commence or cause to be commenced, or shall fail to diligently prosecute to completion, such Remedial Work, Lender may elect, but shall not be required, to cause such Remedial Work to be performed in which event all costs and expenses thereof, or incurred in connection therewith, including, without limitation, the reasonable fees and expenses of Lender's counsel, shall be paid by Borrower to Lender immediately upon demand and shall be a part of the Indebtedness. "**Remedial Work**" means any response, investigation, site monitoring, containment, cleanup, removal, restoration, corrective action or other remedial work of any kind or nature which is necessary or desirable either (a) under any Applicable Laws, because of or in connection with the current or future presence, suspected presence, Releases (hereinafter defined) or suspected Releases of a Hazardous Substance into the air, soil, ground-water, surface water or soil vapor at, on, about, under or within the Property or portion thereof or (b) to conform to standards of good commercial practice or in order to prevent any Material Adverse Effect.

4. **Covenants**. Indemnitors covenant and agree that: (a) all uses and operations on or of the Property by Indemnitors shall, and Indemnitors shall require that the uses and operations on or of the Property by any other person or party shall, be in compliance in all material respects with Environmental Laws and permits issued pursuant thereto; (b) there shall be no release, deposit, discharge, emission, leaking, leaching, spilling, seeping, migrating, injecting, pumping, pouring, emptying, escaping, dumping, disposing or other movement (collectively, "**Releases**") of Hazardous Substances in, on, under or from the Property that do not comply in all material respects with Environmental Laws; (c) there shall be no Hazardous Substances in, on, or under the Property, except for minor amounts that are both (i) in compliance in all material respects with all Environmental Laws and with permits issued pursuant thereto and (ii) disclosed to Lender in writing; (d) Indemnitors shall keep the Property free and clear of all liens and other encumbrances imposed pursuant to any Environmental Law, whether due to any act or omission of Indemnitor or any other person or party (the "**Environmental Liens**"); (e) Indemnitors shall, at their sole cost and expense, fully and expeditiously cooperate at reasonable times, upon reasonable notice, and so long as the same does not interfere with the use of the Property by Indemnitors or any tenant under or pursuant to its applicable Lease, in all activities pursuant to Section 5 below, including but not limited to providing all relevant information and making knowledgeable persons available for interviews; (f) Indemnitors shall, at their sole cost and expense, perform any environmental site assessment or other investigation of environmental conditions in connection with the Property, pursuant to any reasonable written request of Lender made in the event Lender has reason to believe, in good faith, that a material environmental hazard exists on the Property which Indemnitors, after notice, have failed to address (including but not limited to sampling, testing and analysis of soil, water, air, building materials, and other materials and substances whether solid, liquid or gas), and share with Lender the reports and other results thereof, and Indemnitors shall use reasonable efforts to cause the sources of such reports to permit Lender and other Indemnified Parties to rely on such reports and other results thereof; (g) Indemnitors shall, at their sole cost and expense, comply with all reasonable written requests of Lender made in the event that Lender has reason to believe, in good faith, that a material environmental hazard exists on the Property which Indemnitors, after notice, have failed to address, to (i) reasonably effectuate required Remedial Work of any environmental condition (including but not limited to a Release of a Hazardous Substance) in, on, under or from the Property; (ii) comply in all material respects with any Environmental Law; and (iii) comply in all material respects with any directive from any governmental authority; and (h) Indemnitors shall promptly notify Lender in writing if any Indemnitor obtains knowledge of (A) any presence or Releases or threatened Releases of Hazardous Substances in, on, under, from or migrating towards the Property other than as disclosed in the Environmental Report; (B) any material non-compliance with any Environmental Laws related in any way to the Property other than as disclosed in the Environmental Report; (C) any actual or potential Environmental Lien other than as disclosed in the Environmental Report; (D) any required or proposed Remedial Work of environmental conditions relating to the Property; and (E) any written notice or other written communication of which any Indemnitor becomes aware from any source whatsoever (including but not limited to a governmental entity) relating in any way to Hazardous Substances or Remedial Work thereof, possible liability of any person or entity pursuant to any Environmental Law, other material adverse environmental conditions in connection with the Property, or any actual or potential administrative or judicial proceedings in connection with anything referred to in this Agreement.

If at any time during which the Property is owned by Borrower or any of Indemnitors or any of their respective affiliates, any Environmental Lien is recorded or filed against the Property, then Indemnitors shall, not later than forty-five (45) days following Indemnitors' receipt of notification of the filing of such Environmental Lien, satisfy the claim and cause the same to be discharged of record (whether by payment, bonding, insuring over or otherwise).

5. **Cooperation**. In the event that Lender has a reasonable basis to believe that an environmental hazard exists on the Property, upon reasonable notice by Lender to Indemnitors, Indemnitors at their expense shall promptly cause an engineer or consultant reasonably satisfactory to Lender to conduct an Environmental Site Assessment (the scope of which shall be determined in Lender's sole and absolute discretion) and take any samples of soil, groundwater or other water, air, or building materials or any other invasive testing reasonably requested by Lender and promptly deliver the results of any such assessment, audit, sampling or other testing to Lender; provided, however, if such results are not delivered to Lender within a reasonable period or if Lender has reason to believe that an environmental hazard exists on the Property that, in Lender's reasonable judgment, constitutes an imminent danger to any tenant or other occupant of the Property or their guests or the general public or there exists an imminent threat of a materially and adverse effect on the value of the Property, then, upon reasonable notice to Indemnitors, Lender and any other Person designated by Lender, including but not limited to any receiver, any representative of a governmental entity, and any environmental consultant, shall have the right, but not the obligation, to enter upon the Property at all reasonable times to assess any and all aspects of the environmental condition of the Property and its use, including but not limited to conducting any Environmental Site Assessment or audit (the scope of which shall be determined in Lender's reasonable discretion) and taking samples of soil, groundwater or other water, air, or building materials, and reasonably conducting other invasive testing. Indemnitors shall cooperate with and provide reasonable access to Lender and any such person or entity designated by Lender.

6. **Waivers**. Indemnitors hereby expressly waive:

(a) **Notices**. Notice of the acceptance by Lender of this Agreement, notice of the existence, creation or non-payment of any of the Indemnity Obligations, presentment, demand, notice of dishonor, protest, notice of protest, and all other notices which may be required by statute, rule of law or otherwise, now or hereafter in effect, except any specifically required by this Agreement.

(b) **Disclosures About Borrower**. Any obligation Lender may have to disclose to Guarantor any facts Lender now or hereafter may know or have reasonably available to it regarding Borrower or Borrower's financial condition, or regarding the Property or any other collateral for the Loan whether or not Lender has a reasonable opportunity to communicate such facts or has reason to believe that any such facts are unknown to Guarantor or materially increase the risk to Guarantor beyond the risk Guarantor intends to assume hereunder. Guarantor shall be fully responsible for keeping informed of the financial condition of Borrower

and of all other circumstances bearing on the risk of nonpayment or nonperformance of the Indemnity Obligations.

(c) **Diligence in Collection**. All diligence in collection of any of the Indemnity Obligations or any guaranty or other security for any of the foregoing.

(d) **Benefit of Certain Laws**. The benefit of all appraisement, valuation, marshaling, forbearance, stay, extension, reinstatement, redemption, homestead, exemption and moratorium laws now or hereafter in effect.

(e) **Certain Defenses**. Any defense based on the incapacity, lack of authority, death or disability of any other person or entity or the failure of Lender to file or enforce a claim against the estate of any other person or entity in any administrative, bankruptcy or other proceeding.

(f) **Election of Remedies Defense**. Any defense based on an election of remedies by Lender, whether or not such election may affect in any way the recourse, subrogation or other rights of Guarantor against Borrower or any other person in connection with the Indemnity Obligations.

(g) **Defenses Relating to Collateral Sale**. Any defense based on the failure of Lender to: (i) provide notice to Guarantor of a sale or other disposition (including any collateral sale pursuant to the Uniform Commercial Code) of any of the security for any of the Indemnity Obligations; (ii) conduct such a sale or disposition in a commercially reasonable manner; or (iii) perfect or continue to perfect any of Lender's Liens.

(h) **Defenses Relating to Loan Administration**. Any defense based on the negligence of Lender in administering the Loan, or taking or failing to take any action in connection therewith or any claim based on allegations that Lender failed to act in a commercially reasonable manner or failed to exercise any obligation of good faith and fair dealing.

(i) **Right to Enforce Lender's Remedies**. Any right to enforce any remedies or to participate in any security Lender now has, or later may have, against Borrower, or any requirement to exhaust any remedies, whether by subrogation or otherwise, or any requirement to mitigate damages, until all Liabilities and Expenses have been paid to Lender.

7. **Other Agreements**.

(a) **Continuing Obligation**. This Agreement is unconditional and irrevocable and shall in all respects be a continuing and primary

- 5 -

obligation of Indemnitors and shall not be subject to any counterclaim, set-off, abatement, deferment or defense based on any claim that any of the Indemnitors may have against Lender, any other obligor, or any other person or entity. This Agreement shall remain in full force and effect until all of the following have occurred: (i) all of the Indemnity Obligations have been satisfied in full; and (ii) Lender has no further obligation to make any advance under the Loan Documents. No notice of discontinuance or revocation shall affect any of the obligations of Indemnitors or of any other obligor with respect to any of the Indemnity Obligations. Lender shall not be obligated to accept at any time any deed in lieu of foreclosure, and all obligations of Indemnitors hereunder shall survive foreclosure or any deed in lieu of foreclosure which Lender may accept, to the extent any of the Indemnity Obligations remain unsatisfied.

(b) **Obligations; Successors and Assigns**. All obligations under this Agreement shall be binding upon Indemnitors, and upon each Indemnitor's heirs, legal representatives, successors and assigns and shall inure to the benefit of Lender, each holder of the Note and the successors and assigns of each holder of the Note.

(c) **Assignment by Lender**. Lender may from time to time, without notice to Indemnitors, assign or transfer any interest in any of the Indemnity Obligations by loan participation or otherwise, and notwithstanding such assignment or transfer, such Indemnity Obligations shall remain Indemnity Obligations for purposes of this Agreement.

(d) **No Exculpation**. No exculpatory, "non-recourse", "limited recourse", or other language contained in any other Loan Document or in any other document shall in any way prevent or limit Lender from enforcing this Agreement against Indemnitors personally.

(e) **Payment**. All payments hereunder shall be made in coin or currency which at the time of payment is legal tender in the United States of America for public and private debts. Any amounts payable to any Indemnified Parties under this Agreement shall become immediately due and payable on written demand and, if not paid within ten (10) days of such demand therefor, shall bear interest at the Default Rate (but in no event greater than the maximum rate permitted by applicable law).

(f) **Time of Essence**. Time is of the essence of this Agreement.

(g) **Definitions; Captions; Gender**. With respect to any reference in this Agreement to any defined term: (i) if such defined term refers to a person, or a trust, corporation, partnership or other entity, then it shall also mean all heirs, personal representatives, successors and assigns of such person or entity; and (ii) if such defined term refers to a

document, instrument or agreement, then it shall also include any replacement, extension or other modification thereof. Captions contained in this Agreement in no way define, limit or extend the scope or intent of their respective provisions. Use of the masculine, feminine or neuter gender and of singular and plural shall not be given the effect of any exclusion or limitation herein. The use in this Agreement of the term "including", and related terms such as "include", shall in all cases mean "including, without limitation".

(h) **Notices**. All Notices shall be in writing and shall be (a) delivered in person, in which event the Notice shall be deemed received when delivery is actually made, (b) telecopied, in which event the Notice shall be deemed received on the date of transmission if transmission is confirmed before 4:00 p.m. Chicago time on a Business Day or if transmission is confirmed after 4:00 p.m. Chicago time, then on the next Business Day provided that the sender obtains electronic confirmation of receipt and that a copy of such Notice is also delivered pursuant to clause (a) or (c); or (c) sent by a nationally recognized overnight courier for next business day delivery, in which event the Notice shall be deemed received on the first Business Day after delivery to, and acceptance for delivery by, the courier. All such Notices intended for Lender or Borrower shall be delivered, with a copy to its respective attorney, to their respective Addresses set forth in the Loan Agreement and if sent by facsimile such Notices shall be sent to the facsimile numbers set forth in the Loan Agreement. Either party may change its Address or facsimile number by giving written notice to the other in accordance with the foregoing notice provision.

Indemnitor's Address for Notices is: The Landings Florida, LLC
c/o Commercial Ventures, Inc.
12100 Wilshire Blvd., Suite 250
Los Angeles, CA 90025
Attn: Richard Nathan and Greg Beach
Facsimile No.: (310) 207-8497

Richard J. Nathan
314 Cliffwood Drive
Los Angeles, CA 90049

With a copy to:                Shumaker Steckbauer Weinhart
333 S. Hope Street, 36th Floor
Los Angeles, CA 90071
Attn: Brian Weinhart
Facsimile No.: (213) 229-2870

(i) **No Modification Without Writing**. This Agreement may not be terminated or modified in any way nor can any right of Lender or any obligation of Indemnitors be waived or modified, except by a writing signed by Lender and the Indemnitors intended to be affected.

(j) **Independent Obligations**. The obligations of each Indemnitor hereunder are independent of the obligations of Borrower and each other indemnitor. In the event of any default hereunder, Lender may institute a separate action against Guarantor with or without joining or instituting a separate action against Borrower or against any other indemnitor or other obligor.

(k) **Financial Risk**. Each Indemnitor shall be fully responsible for keeping himself, herself or itself, as the case may be, informed of the financial condition of Borrower and of all other circumstances bearing on the risk of nonpayment or nonperformance of the Indemnity Obligations.

(l) **Severability**. Each provision of this Agreement shall be interpreted so as to be effective and valid under applicable law, but if any provision of this Agreement shall in any respect be ineffective or invalid under such law, such ineffectiveness or invalidity shall not affect the remainder of such provision or the remaining provisions of this Agreement.

(m) **Cumulative**. The obligations of each Guarantor hereunder are in addition to any other obligations Indemnitors may now or hereafter have to Lender, and shall not be affected in any way by the delivery to Lender by Indemnitors or any other obligor of any other indemnity, or any combination thereof. All rights and remedies of Lender and all obligations of each Guarantor under this Agreement are cumulative. In addition, Lender shall have all rights and remedies available to Lender in law or equity for the enforcement of this Agreement.

(n) **Effect of Lender's Delay or Action**. No delay by Lender in the exercise of any right or remedy shall operate as a waiver thereof, and no single or partial exercise by Lender of any right or remedy shall preclude any other exercise thereof or the exercise of any other right or remedy. No action of Lender permitted hereunder shall in any way impair or otherwise affect any right of Lender or obligation of Indemnitors under this Agreement. Lender shall not be liable in any way for any decrease in the value or marketability of any property securing any of the Indemnity Obligations which may result from any action or omission of Lender in enforcing any part of this Agreement.

(o) **Governing Law**. THE TERMS OF THE LOAN AND THIS AGREEMENT WERE EACH NEGOTIATED IN THE STATE OF ILLINOIS, WHICH STATE THE PARTIES AGREE HAS A

SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING LOAN TRANSACTION, INCLUDING WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE. THEREFORE, THIS AGREEMENT SHALL BE CONSTRUED AND INTERPRETED WITH, AND GOVERNED BY, THE INTERNAL LAWS OF THE STATE OF ILLINOIS, WITHOUT GIVING EFFECT TO ILLINOIS CHOICE OF LAW PRINCIPLES.

(p) <u>Subrogation</u>. Until all Indemnity Obligations have been paid to Lender, and all periods under applicable bankruptcy law for the contest of any payment by any Indemnitor as a preferential or fraudulent payment have expired, each Indemnitor knowingly and with advice of counsel, waives, relinquishes, releases and abandons all rights and claims to indemnification, contribution, reimbursement, subrogation and payment which such Indemnitor may now or hereafter have by and from Borrower and Borrower's successors and assigns, for any payments made by Indemnitor to Lender, including without limitation, any rights which might allow Borrower, Borrower's successors and assigns or creditors, or a trustee in bankruptcy of Borrower to claim in bankruptcy or any other similar proceedings that any payment made by Borrower or Borrower's successors and assigns to Lender was on behalf of or for the benefit of Indemnitor and that such payment is recoverable by Borrower, a creditor or trustee in bankruptcy of Borrower as a preferential payment, fraudulent conveyance, payment of an insider or any other classification of payment which may otherwise be recoverable from Lender. Each Indemnitor further waives any defense based upon an election of remedies by Lender which destroys or otherwise impairs any subrogation rights of Indemnitor to proceed against Borrower.

(q) <u>Joint and Several</u>. The Indemnity Obligations shall be the joint and several obligations and liabilities of Indemnitors. Notwithstanding any provisions of this Agreement to the contrary, it is intended that the joint and several nature of the liability of the Indemnity Obligations and the liens and security interests, if any, granted as security for the Indemnity Obligations, not constitute a fraudulent conveyance under the Bankruptcy Code or a fraudulent conveyance or fraudulent transfer under the applicable provisions of any fraudulent conveyance or fraudulent transfer law or similar law of any state, nation or other governmental unit, as in effect from time to time (a "Fraudulent Conveyance"). Consequently, if the liability of Indemnitors for the Indemnity Obligations, or any liens or security interests granted by Indemnitors securing the Indemnity Obligations would, but for the application of this sentence, constitute a Fraudulent Conveyance, the liability of Indemnitors and the liens and security interests securing such liability shall be valid and enforceable only to the maximum extent that

would not cause such liability or such lien or security interest to constitute a Fraudulent Conveyance.

(r) **Unconditional Obligations**. The obligations of each Indemnitor shall be unconditional, irrespective of (i) the institution of any proceeding under the Bankruptcy Code, or any similar proceeding, by or against an Indemnitor or Lender's election in any such proceeding of the application of Section 1111(b)(2) of the Bankruptcy Code; (ii) any borrowing or grant of a security interest by Borrower as debtor-in-possession, under Section 364 of the Bankruptcy Code; (iii) the disallowance, under Section 502 of the Bankruptcy Code, of all or any portion of Lender's claim(s) for repayment of any of the Indemnity Obligations; or (iv) any other circumstance other than payment in full of the Indemnity Obligations which might otherwise constitute a legal or equitable discharge or defense of a guarantor.

(s) **CONSENT TO JURISDICTION**. EACH INDEMNITOR ACKNOWLEDGES THAT LENDER'S PRINCIPAL OFFICE IS LOCATED IN CHICAGO, ILLINOIS AND THAT LENDER MAY BE IRREPARABLY HARMED IF REQUIRED TO INSTITUTE OR DEFEND ANY ACTION IN ANY JURISDICTION OTHER THAN THE FEDERAL DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION OR THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS. THEREFORE, EACH INDEMNITOR IRREVOCABLY: (A) AGREES THAT ANY SUIT, ACTION OR OTHER LEGAL PROCEEDING RELATING TO THIS AGREEMENT MAY BE BROUGHT ONLY IN THE CIRCUIT COURT OF COOK COUNTY OR FEDERAL DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION AT LENDER'S OPTION; (B) CONSENTS TO THE JURISDICTION OF EACH SUCH COURT IN ANY SUCH SUIT, ACTION OR PROCEEDING; (C) WAIVES ANY OBJECTION WHICH SUCH INDEMNITOR MAY HAVE TO THE LAYING OF VENUE IN ANY SUCH SUIT, ACTION OR PROCEEDING IN ANY OF SUCH COURTS; AND (D) AGREES TO JOIN LENDER IN ANY PETITION FOR REMOVAL TO ANY OF SUCH COURTS.

(t) **WAIVER OF JURY TRIAL**. EACH INDEMNITOR AND LENDER, BY ITS ACCEPTANCE OF THIS AGREEMENT, HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE THIS AGREEMENT, OR BASED UPON OR ARISING OUT OF THE SUBJECT MATTER OF THIS AGREEMENT. THIS WAIVER IS KNOWINGLY, INTENTIONALLY AND VOLUNTARILY MADE BY INDEMNITORS AND LENDER, AND INDEMNITORS ACKNOWLEDGE THAT NEITHER LENDER NOR ANY PERSON

ACTING ON BEHALF OF LENDER HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR HAS TAKEN ANY ACTIONS WHICH IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. INDEMNITORS AND LENDER EACH ACKNOWLEDGE THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT EACH OF THEM HAS ALREADY RELIED ON THIS WAIVER IN ENTERING INTO THIS AGREEMENT AND THAT EACH OF THEM WILL CONTINUE TO RELY ON THIS WAIVER IN THEIR RELATED FURTHER DEALINGS.

(u) **Counterparts, Acknowledgment**. This Agreement may be signed in multiple counterparts, each of which shall constitute an original and, taken together, shall constitute a single agreement. Guarantor acknowledges and agrees to be personally bound by Section 9.10 and 9.21 of the Loan Agreement. Indemnitors expressly acknowledge as follows: (a) the effectiveness of this Agreement shall not be affected by the extinguishment of the aforementioned debt from Borrower to Lender; (b) that this Agreement is not being given as security for Borrower's obligation to repay the Loan or as an assurance to Lender that the Property will retain sufficient value to satisfy the obligations of Borrower to repay the Loan; (c) that this Agreement is being given solely to allocate, as between Borrower and Indemnitors, on the one hand, and Lender, on the other, the risk of expenses which may become necessary because of environmental problems, issues and matters that arise with respect to the Property; and (d) Indemnitors have executed and delivered this Agreement in order to induce Lender, the owner of the Mortgage and the holder of the Note, to disburse the proceeds of the Loan to or at the direction of Borrower for the benefit of Borrower, and, but for the terms and provisions of this Agreement, Lender would not disburse the proceeds of the Loan.

**[The remainder of this page is intentionally blank; signature page follows.]**

Bristol Court

IN WITNESS WHEREOF, this Agreement was duly executed and delivered as of the date first above written.

BORROWER:

**THE LANDINGS FLORIDA, LLC,**
a Florida limited liability company

 By: The Landings Florida Member, LLC,
   a Delaware limited liability company,
   Its Sole Member and Manager

   By: Spinnaker/Regatta V, LLC,
     a Washington limited liability company,
     Its Sole Member and Manager

     By: CVI/Spinnaker/Regatta V, Inc.,
       a Washington corporation,
       Its Manager

       By: _____
       Name: Richard Nathan
       Title: President and Sole Director

GUARANTOR:

_____
RICHARD J. NATHAN