**JUDGE NORGLE**
**MAGISTRATE JUDGE ASHMAN**

**08 C 1129**

# EXHIBIT E

## GUARANTY (Carveout)

**THIS GUARANTY** ("Guaranty") is dated as of February 28, 2006 and is made by RICHARD J. NATHAN, individually ("Guarantor"), for the benefit of ORIX Real Estate Capital, Inc. and its successors and assigns ("Lender").

## RECITALS

A.　Lender has agreed to loan up to the principal amount of Twenty-Six Million Five Hundred Thousand and No/100 Dollars ($26,500,000) (the "Loan") to The Landings Florida, LLC, a Florida limited liability company ("Borrower") pursuant to the terms and conditions of a certain Loan and Security Agreement of even date herewith (as amended from time to time, the "Loan Agreement") by and between Borrower and Lender. All capitalized terms not otherwise defined in this Guaranty shall have the meanings given them in the Loan Agreement.

B.　Lender has required, as a condition precedent to extension and disbursement of the Loan to Borrower and in consideration therefor, the execution and delivery of this Guaranty by Guarantor.

C.　Guarantor has an interest in Borrower, and having a financial interest in the Property, has agreed to execute and deliver this Guaranty to Lender.

**NOW THEREFORE**, in consideration of the Recitals set forth above and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Guarantor hereby agrees as follows:

1.　**Liabilities.** Notwithstanding any exculpation or other provisions in any Loan Document to the contrary, Guarantor agrees to be personally liable for the payment and satisfaction of all of the following (collectively, "Guarantor's Liabilities"):

(a)　All Losses and Expenses arising from any of the following:

(i)　any gross negligence or willful misconduct of Borrower or any Guarantor or any of their Affiliates, agents, employees, attorneys-in-fact or representatives;

(ii)　any removal or disposal of any portion of the Property or the Collateral by Borrower or any Guarantor or any of their Affiliates, agents or representatives after an Event of Default;

(iii)　any security deposits, advance deposits or any other deposits collected with respect to the Property which were not delivered to Lender, except to the extent any such security deposits were applied in accordance with the terms and conditions of any of the Leases as expressly permitted by the Loan Agreement;

(iv)    any insurance policy required by the Loan Documents has not been obtained or is no longer in full force and effect, except to the extent such event is due to Lender's failure to comply with its obligations under Section 2.5.3 of the Loan Agreement;

(v)    any payment of fees to an Affiliate following an Event of Default except as expressly permitted by the Loan Documents;

(vi)    any failure to pay when due the Monthly Tax Deposit or the Monthly Insurance Deposit to the extent Revenue was available for such purpose;

(vii)    any rent being paid more than one (1) month in advance (other than security deposits) and not applied to operating expenses of the Property or payment of the Indebtedness;

(viii)    any failure to pay charges for labor or materials or other charges that could result in the creation of Liens on any portion of the Property;

(ix)    any use of Revenues generated after the occurrence of any Default for purposes other than payment of usual and customary operating expenses of the Property or the Indebtedness,

(x)    any use of Loss Recoveries for purposes other than as designated pursuant to the Loan Agreement;

(xi)    any failure to cause all Revenues to be deposited into the Blocked Account in accordance with the requirements of the Loan Agreement;

(xii)    any physical loss or damage affecting the Property resulting from the intentional acts of Borrower or its agents, or any physical or economic waste with respect to the Property or any part thereof;

(xiii)    any failure to allow inspections of the Property or access to Borrower's books and records as required by any of the Loan Documents;

(xiv)    any distributions by Borrower of cash or assets that (A) are not specifically authorized under the Loan Documents, (B) occur on or after the date the conditions required for Borrower to receive any Borrower Return (pursuant to Section 2.6 of the Loan Agreement) have been satisfied and (C) are returned to the Blocked Account within two (2) Business Days after first being disbursed therefrom;

(xv)    any failure of Borrower to fully, completely and punctually perform and satisfy the obligations, duties and agreements of Borrower under the Loan Agreement and the other Loan Documents relating to the

(b)     All of the Indebtedness and other Obligations (including Losses and Expenses) in the event of:

(i)     any fraud or any material misrepresentation by or on behalf of Borrower (including by its employees, agents, Affiliates and attorneys-in-fact) in connection with the Loan, including the Initial Disbursement, any Advance, obtaining any consent or determination from Lender or the submission of financial information;

(ii)     any Transfer, sale, conveyance, assignment, further encumbrance, other transfer or the creation of a security interest, by Borrower of title to, or an ownership interest in, the Property or any other Collateral or any voluntary imposition by Borrower of a Lien upon the Property or any other Collateral unless expressly permitted under the Loan Documents;

(iii)     any acquisition of assets or incurrence of indebtedness by Borrower in violation of any provision of the Loan Documents or any other material breach of Borrower's covenant to maintain its existence as a Single Purpose Entity;

(iv)     the commencement of an Insolvency Proceeding by Borrower or collusion or cooperation by Borrower or any Guarantor with any third party to commence an Insolvency Proceeding against Borrower;

(v)     an Affiliate, officer, director or representative which Controls, directly or indirectly, Borrower or any Guarantor filing, or joining in the filing of, an involuntary petition against Borrower under the Bankruptcy Code or any other Federal or state bankruptcy or insolvency law, or soliciting or causing to be solicited another creditor for the purpose of commencing any such involuntary petition against Borrower;

(vi)     Borrower filing an answer consenting to or otherwise acquiescing in or joining in any involuntary petition filed against

Borrower by any other Person under the Bankruptcy Code or any other Federal or state bankruptcy or insolvency law;

(vii)   Borrower consenting to or acquiescing in or joining in an application for the appointment of a custodian, receiver, trustee, or examiner for Borrower or any portion of the Property or the Collateral or Borrower making an assignment for the benefit of creditors;

(viii)   Borrower, Guarantor or any Affiliate of Borrower or Guarantor contesting or in any way interfering with, directly or indirectly, any foreclosure action, UCC sale or other remedy exercised by Lender upon the occurrence of any Event of Default whether by making any motion, bringing any counterclaim, claiming any defense, seeking any injunction or other restraint, commencing any action, or otherwise; or

(ix)   any distributions by Borrower of cash or assets that (A) are not specifically authorized under the Loan Documents and (B) (1) occur prior to the date the conditions required for Borrower to receive any Borrower Return (pursuant to Section 2.6 of the Loan Agreement) have been satisfied or (2) occur on or after the date the conditions required for Borrower to receive any Borrower Return (pursuant to Section 2.6 of the Loan Agreement) have been satisfied, but are not returned to the Blocked Account within two (2) Business Days after first being disbursed therefrom.

brought against Guarantor, as often as Lender deems advisable, until all of Guarantor's Liabilities are paid and performed in full.

(b)     Guarantor hereby agrees to indemnify, defend and save harmless Lender from and against any and all costs, losses, liabilities, claims, causes of action, expenses and damages, including reasonable attorneys' fees and disbursements, which Lender may suffer or otherwise may arise by reason of Borrower's failure to pay or perform any of the Indebtedness or the Obligations when due, irrespective of whether such costs, losses, liabilities, claims, causes of action, expenses or damages are incurred by Lender prior or subsequent to (i) Lender's declaring the principal, interest and other sums evidenced or secured by the Loan Documents to be due and payable, (ii) the commencement or completion of a judicial or non-judicial foreclosure of the Mortgage or (iii) the conveyance of all or any portion of the Property by deed-in-lieu of foreclosure.

(c)     Guarantor agrees that no portion of any sums applied (other than sums received from Guarantor in full or partial satisfaction of its obligations hereunder), from time to time, in reduction of the Indebtedness shall be deemed to have been applied in reduction of the Guarantor's Liabilities until such time as the Debt has been paid in full, or Guarantor shall have made the full payment required hereunder, it being the intention hereof that the Guarantor's Liabilities shall be the last portion of the Indebtedness to be deemed satisfied.

3.     **Representations and Warranties**.     Guarantor hereby represents and warrants to Lender as follows:

(a)     **Review of this Guaranty and the Loan Documents**.  Guarantor has reviewed with the benefit of its legal counsel the terms of this Guaranty and each other Loan Document.

(b)     **Organization; Authorization**.  If Guarantor is not a natural person, Guarantor is duly organized, validly existing and in good standing under the laws of the State of its formation, and has duly qualified and is in good standing under the laws of each other State in which its activities require that it be qualified.  Guarantor has all requisite partnership or corporate (as the case may be) power and all material governmental licenses, authorizations, consents, and approvals necessary to own its assets and carry on its business as now being conducted.  Guarantor delivered this Guaranty executed by the proper individuals pursuant to proper authority duly granted.

(c)     **Enforceability**.  Each obligation under this Guaranty is legal, valid, binding and enforceable against Guarantor in accordance with its terms.

(d)     **Financial Statements**.  The financial statements furnished on behalf of Guarantor to Lender in connection with this Guaranty or the Loan Documents are: (a) true and correct in all material respects; (b) have been prepared in accordance with sound cash basis accounting principles consistently

- 5 -

applied; and (c) present fairly the financial condition of Guarantor as of the respective dates thereof. No material adverse change has occurred in the financial condition of Guarantor since the effective dates of such financial statements.

(e)     **No Existing Defaults and No Litigation**.  Guarantor is not in default under any agreement, and no event has occurred that with the passage of time and/or the giving of notice would constitute a default under any agreement, the effect of which could materially adversely affect performance of Guarantor's obligations under this Guaranty.  There are no litigation, arbitration, governmental or administrative proceedings, actions, examinations, claims or demands pending or, to the best of Guarantor's knowledge, threatened against Guarantor before any court or other governmental authority of any kind which could materially adversely affect performance of Guarantor's obligations under this Guaranty. Neither the execution and delivery of this Guaranty nor compliance with the terms and provisions of this Guaranty will violate any applicable law, rule, regulation, judgment, decree or order, or will conflict with or result in any breach of any of the terms, covenants, conditions or provisions of any indenture, mortgage, deed of trust, instrument, document, agreement or contract of any kind that creates, represents, evidences or provides for any lien, charge or encumbrance upon any of the property or assets of Guarantor, or any other indenture, mortgage, deed of trust, instrument, document, agreement or contract of any kind to which Guarantor is a party or to which Guarantor or the property of Guarantor may be subject.

(f)     **No Misstatements or Omissions**.  This Guaranty does not contain any untrue statement of fact nor omit to state any fact material to this Guaranty. Guarantor has no knowledge of any material fact, inaccuracy or untruth concerning the Borrower or Borrower's financial condition which has not been disclosed to Lender and might adversely affect Lender's determination to enter into or arrange disbursement of the Loan.

(g)     **Governmental Approval**.  No registration with or consent or approval of, or other action by, any Federal, state, municipal or other governmental agency, authority or regulatory body, domestic or foreign, relating to Guarantor is or will be required in connection with the execution, delivery and performance of this Guaranty.

(h)     **Loans to Borrower**.  Borrower has no unpaid loans or advances from, or other obligations to, Guarantor.

4.     **Indemnities**.  Guarantor hereby indemnifies Lender and agrees to defend and hold Lender harmless from and against any loss, cost, damage or expense occurring by reason of a breach of the representations or warranties set forth in this Guaranty, and the loss, mitigation, subordination or other consequences adverse to Lender by reason of this Guaranty being challenged as a preference or suffering any other subjugation under any bankruptcy or other law, whether state or federal, affecting debtors, creditors and/or the relationship between such parties.

- 6 -

CH01/ 12462957.7

payment of any of Guarantor's Liabilities, whether or not Lender shall have (A) proceeded against Borrower or any other guarantor or any other party primarily or secondarily obligated with respect to any of Guarantor's Liabilities or (B) resorted to or exhausted any other remedy or any other security or collateral; and (vii) foreclose on, take possession of or sell any of the collateral or security for Guarantor's Liabilities or enforce any other rights under any other Loan Document.

(e)     **Lender's Option to Release**.  Lender may from time to time in Lender's sole discretion release Guarantor from any of Guarantor's obligations hereunder or release Borrower or any other obligor from any of the Indebtedness or the Obligations without notice to any other guarantor or any other party and without in any way releasing or affecting the liability of Guarantor.

(f)     **Application of Payments**.  Lender may apply any payment made on account of the Indebtedness or the Obligations toward such of the Indebtedness or the Obligations, and in such order as Lender may from time to time elect in Lender's sole discretion, whether or not the Indebtedness or the Obligations are guaranteed hereby, otherwise secured or due at the time of application.

(g)     **Subordination**.  Guarantor hereby subordinates any debts, obligations, claims or liens of Guarantor against Borrower, of any kind (including any right of Guarantor to a return of any capital contributed to Borrower), to all of Guarantor's Liabilities and to any other claims or liens of Lender against Borrower or the property of any of them.  Upon any notice by Lender to Borrower of any Event of Default under any Loan Document, Guarantor shall enforce any of Guarantor's claims or liens as trustee for Lender, and shall cause any receipts to be paid over to Lender without affecting in any manner the liability of Guarantor under this Guaranty except to the extent of such payment.  Except as provided in the preceding sentence, until the Indebtedness is paid in full and all of Lender's obligations under the Loan Documents have terminated, Guarantor shall not, without Lender's consent, take any action of any kind to enforce any debts, claims or liens of Guarantor against Borrower.  As long as no such notice of default has been given by Lender, Guarantor may apply to Guarantor's own account payments made to Guarantor by or on behalf of Borrower.

(h)     **Certain Events Not Affecting Obligations of Guarantors**.  The obligations of Guarantor hereunder shall not be affected by any of the following: (i) any lack of validity or enforceability of any of the Loan Documents; (ii) the release or discharge of Borrower in any creditors', receivership, bankruptcy, reorganization, insolvency, or other proceeding; (iii) the rejection or disaffirmance in any such proceeding of any of Guarantor's Liabilities (iv) the impairment or modification of any of Guarantor's Liabilities, or of any remedy for the enforcement thereof, or of the estate of Borrower in bankruptcy, resulting from any present or future federal or state bankruptcy law or any other law of any kind or from the decision or order of any court or other governmental authority; (v) any disability or defense of Borrower; (vi) the cessation of the liability of

- 8 -

Borrower for any cause whatsoever other than payment and performance in full of all of the Indebtedness and the Obligations; (vii) any sale, assignment, transfer or other conveyance (including any conveyance in lieu of foreclosure or any collateral sale pursuant to the Uniform Commercial Code) of any of the security for any of Guarantor's Liabilities, regardless of the amount received by Lender in connection therewith; or (viii) any disability or defense of any kind now existing of Guarantor with respect to any provision of this Guaranty.

(i) **No Obligation of Lender Regarding Security Interest**. Lender shall have no obligation to obtain, perfect or retain a security interest in any property to secure any of Guarantor's Liabilities or this Guaranty (including any mortgage or security interest contemplated by the Loan Documents), or to protect or insure any such property.

(j) **Filing of Certain Claims**. Guarantor shall promptly file in any bankruptcy or other proceeding in which the filing of claims is required by law all claims and proofs of such claims which Guarantor may have against Borrower, and will collaterally assign to Lender or its nominee all rights of Guarantor thereunder. If Guarantor does not so file, Guarantor hereby irrevocably authorizes Lender or Lender's nominee to do so, either (in Lender's discretion) as attorney-in-fact for Guarantor, or in the name of Lender or Lender's nominee. In all such cases, any party authorized to pay such claim shall pay to Lender or its nominee the full amount thereof.

(k) **Obligations and Taxes**. Guarantor shall pay and discharge promptly when due all taxes, assessments and governmental charges or levies imposed upon Guarantor or upon Guarantor's income or profits or in respect of Guarantor's property before the payment shall become delinquent or in default; provided, however, that Guarantor shall not be required to pay and discharge or to cause to be paid and discharged any such tax, assessment or governmental charge or levy so long as the validity or amount thereof shall be contested in good faith by appropriate proceedings and Guarantor shall, to the extent required by generally accepted accounting principles applied on a consistent basis, have set aside on Guarantor's books adequate reserves with respect thereto.

6. **Waivers**. Guarantor hereby expressly waives:

(a) **Notices**. Notice of the acceptance by Lender of this Guaranty, notice of the existence, creation or non-payment of any of Guarantor's Liabilities, presentment, demand, notice of dishonor, protest, notice of protest, and all other notices which may be required by statute, rule of law or otherwise, now or hereafter in effect, except any specifically required by this Guaranty.

(b) **Disclosures About Borrower**. Any obligation Lender may have to disclose to Guarantor any facts Lender now or hereafter may know or have reasonably available to it regarding Borrower or Borrower's financial condition, or regarding the Property or any other collateral for the Loan whether or not

- 9 -

Lender has a reasonable opportunity to communicate such facts or has reason to believe that any such facts are unknown to Guarantor or materially increase the risk to Guarantor beyond the risk Guarantor intends to assume hereunder. Guarantor shall be fully responsible for keeping informed of the financial condition of Borrower and of all other circumstances bearing on the risk of nonpayment or nonperformance of Guarantor's Liabilities.

(c)     **Diligence in Collection**. All diligence in collection of any of Guarantor's Liabilities, any obligation hereunder, or any guaranty or other security for any of the foregoing.

(d)     **Benefit of Certain Laws**. The benefit of all appraisement, valuation, marshaling, forbearance, stay, extension, reinstatement, redemption, homestead, exemption and moratorium laws now or hereafter in effect.

(e)     **Certain Defenses**. Any defense based on the incapacity, lack of authority, death or disability of any other person or entity or the failure of Lender to file or enforce a claim against the estate of any other person or entity in any administrative, bankruptcy or other proceeding.

(f)     **Election of Remedies Defense**. Any defense based on an election of remedies by Lender, whether or not such election may affect in any way the recourse, subrogation or other rights of Guarantor against Borrower or any other person in connection with Guarantor's Liabilities.

(g)     **Defenses Relating to Collateral Sale**. Any defense based on the failure of Lender to: (i) provide notice to Guarantor of a sale or other disposition (including any collateral sale pursuant to the Uniform Commercial Code) of any of the security for any of Guarantor's Liabilities; or (ii) conduct such a sale or disposition in a commercially reasonable manner.

(h)     **Defenses Relating to Loan Administration**. Any defense based on the negligence of Lender in administering the Loan, or taking or failing to take any action in connection therewith or any claim based on allegations that Lender failed to act in a commercially reasonable manner or failed to exercise any obligation of good faith and fair dealing.

(i)     **Right to Enforce Lender's Remedies**. Any right to enforce any remedies or to participate in any security Lender now has, or later may have, against Borrower, or any requirement to exhaust any remedies, whether by subrogation or otherwise, or any requirement to mitigate damages, until all of the Indebtedness has been paid to Lender and all other Obligations have been performed.

7.     **Miscellaneous**.

(a)     **Continuing Guaranty**. This Guaranty is unconditional and irrevocable and shall in all respects be a continuing guaranty and a primary

obligation of Guarantor and shall not be subject to any counterclaim, set-off, abatement, deferment or defense based on any claim that Guarantor may have against Lender, Borrower, any other guarantor, or any other person or entity. This Guaranty shall remain in full force and effect until all of the following have occurred: (i) all of Guarantor's Liabilities have been satisfied in full; and (ii) Lender has no further obligation to make any advance under the Loan Documents. No notice of discontinuance or revocation shall affect any of the obligations of Guarantor hereunder or of Borrower or of any other obligor with respect to any of Guarantor's Liabilities. Lender shall not be obligated to accept at any time any deed in lieu of foreclosure, and all obligations of Guarantor hereunder shall survive foreclosure or any deed in lieu of foreclosure which Lender may accept, to the extent any of Guarantor's Liabilities remain unsatisfied.

(b) **Obligations; Successors and Assigns**. All obligations under this Guaranty shall be binding upon Guarantor, and upon Guarantor's heirs, legal representatives, successors and assigns and shall inure to the benefit of Lender, each holder of the Note and the successors and assigns of each holder of the Note.

(c) **Assignment by Lender**. Lender may from time to time, without notice to Guarantor, assign or transfer any interest in any of Guarantor's Liabilities by loan participation or otherwise, and notwithstanding such assignment or transfer, such Guarantor's Liabilities shall remain Guarantor's Liabilities for purposes of this Guaranty.

(d) **No Exculpation**. No exculpatory, "non-recourse", "limited recourse", or other language contained in any other Loan Document or in any other document shall in any way prevent or limit Lender from enforcing this Guaranty against Guarantor personally.

(e) **Legal Tender of United States**. All payments hereunder shall be made in coin or currency which at the time of payment is legal tender in the United States of America for public and private debts.

(f) **Time of Essence**. Time is of the essence of this Guaranty.

(g) **Definitions; Captions; Gender**. With respect to any reference in this Guaranty to any defined term: (i) if such defined term refers to a person, or a trust, corporation, partnership or other entity, then it shall also mean all heirs, personal representatives, successors and assigns of such person or entity; and (ii) if such defined term refers to a document, instrument or agreement, then it shall also include any replacement, extension or other modification thereof. Captions contained in this Guaranty in no way define, limit or extend the scope or intent of their respective provisions. Use of the masculine, feminine or neuter gender and of singular and plural shall not be given the effect of any exclusion or limitation herein. The use in this Guaranty of the term "including", and related terms such as "include", shall in all cases mean "including, without limitation".

CH01/ 12462957.7

(h)   **Notices**.  All Notices given under or pursuant to this Guaranty shall be in writing and shall be (a) delivered in person, in which event the Notice shall be deemed received when delivery is actually made, (b) telecopied, in which event the Notice shall be deemed received on the date of transmission if transmission is confirmed before 4:00 p.m. Chicago time on a Business Day or if transmission is confirmed after 4:00 p.m. Chicago time, then on the next Business Day provided that the sender obtains electronic confirmation of receipt and that a copy of such Notice is also delivered pursuant to clause (a) or (c); or (c) sent by a nationally recognized overnight courier for next business day delivery, in which event the Notice shall be deemed received on the first Business Day after delivery to, and acceptance for delivery by, the courier.  All such Notices intended for Lender shall be delivered, with a copy to its attorney, to their respective Addresses provided in the Loan Agreement and if sent by facsimile such Notices shall be sent to the facsimile numbers set forth in the Loan Agreement.  Either party may change its Address or facsimile number by giving written notice to the other in accordance with the foregoing notice provision.

Guarantor's Address for Notices is:

> Richard J. Nathan
> 314 Cliffwood Drive
> Los Angeles, CA  90049

With a copy to:

> Shumaker Steckbauer Weinhart
> 333 S. Hope Street, 36th Floor
> Los Angeles, CA  90071
> Attn:  Brian Weinhart
> Facsimile No:  (213) 229-2870

(i)   **Entire Agreement**.   This Guaranty constitutes the entire agreement of Guarantor for the benefit of Lender with respect to the subject matter hereof and supersedes any prior agreements with respect to the subject matter hereof.

(j)   **No Modification Without Writing**.  This Guaranty may not be terminated or modified in any way nor can any right of Lender or any obligation of Guarantor be waived or modified, except by a writing signed by Lender and Guarantor.

(k)   **Independent Obligations**.   The obligations of Guarantor hereunder are independent of the obligations of Borrower and each other guarantor.  In the event of any default hereunder, Lender may institute a separate action against Guarantor with or without joining or instituting a separate action against Borrower or against any other guarantor or other obligor.

- 12 -

(l)     **Financial Risk**.  Guarantor shall be fully responsible for keeping himself, herself or itself, as the case may be, informed of the financial condition of Borrower and of all other circumstances bearing on the risk of nonpayment or nonperformance of the Indebtedness or Obligations.

(m)     **Severability**.  Each provision of this Guaranty shall be interpreted so as to be effective and valid under applicable law, but if any provision of this Guaranty shall in any respect be ineffective or invalid under such law, such ineffectiveness or invalidity shall not affect the remainder of such provision or the remaining provisions of this Guaranty.

(n)     **Cumulative**.  The obligations of Guarantor hereunder are in addition to any other obligations Guarantor may now or hereafter have to Lender, and shall not be affected in any way by the delivery to Lender by Guarantor or any other guarantor of any other guaranty, or any combination thereof.  All rights and remedies of Lender and all obligations of Guarantor under this Guaranty are cumulative.  In addition, Lender shall have all rights and remedies available to Lender in law or equity for the enforcement of this Guaranty.

(o)     **Effect of Lender's Delay or Action**.  No delay by Lender in the exercise of any right or remedy shall operate as a waiver thereof, and no single or partial exercise by Lender of any right or remedy shall preclude any other exercise thereof or the exercise of any other right or remedy.  No action of Lender permitted hereunder shall in any way impair or otherwise affect any right of Lender or obligation of Guarantor under this Guaranty.  Lender shall not be liable in any way for any decrease in the value or marketability of any property securing any of Guarantor's Liabilities which may result from any action or omission of Lender in enforcing any part of this Guaranty.

(p)     **Subrogation**.  Until all of Guarantor's Liabilities have been paid to Lender, and all periods under applicable bankruptcy law for the contest of any payment by Guarantor as a preferential or fraudulent payment have expired, Guarantor knowingly and with advice of counsel, waives, relinquishes, releases and abandons all rights and claims to indemnification, contribution, reimbursement, subrogation and payment which such Guarantor may now or hereafter have by and from Borrower and Borrower's successors and assigns, for any payments made by Guarantor to Lender, including without limitation, any rights which might allow Borrower, Borrower's successors and assigns or creditors, or a trustee in bankruptcy of Borrower to claim in bankruptcy or any other similar proceedings that any payment made by Borrower or Borrower's successors and assigns to Lender was on behalf of or for the benefit of Guarantor and that such payment is recoverable by Borrower, a creditor or trustee in bankruptcy of Borrower as a preferential payment, fraudulent conveyance, payment of an insider or any other classification of payment which may otherwise be recoverable from Lender. Guarantor further waives any defense based upon an election of remedies by Lender which destroys or otherwise impairs any subrogation rights of Guarantor to proceed against Borrower.

- 13 -

(q)     **Joint and Several**. Guarantor's Liabilities shall be the joint and several obligations and liabilities of Guarantor, Borrower and any other guarantor of all or part of the Indebtedness or Obligations. Notwithstanding any provisions of this Agreement to the contrary, it is intended that the joint and several nature of the liability of Guarantor's Liabilities and the liens and security interests, if any, granted as security for the Indebtedness or Obligations, not constitute a fraudulent conveyance under the Bankruptcy Code or a fraudulent conveyance or fraudulent transfer under the applicable provisions of any fraudulent conveyance or fraudulent transfer law or similar law of any state, nation or other governmental unit, as in effect from time to time (a "Fraudulent Conveyance"). Consequently, if the liability of Guarantor for Guarantor's Liabilities, or any liens or security interests granted by Guarantor securing Guarantor's Liabilities would, but for the application of this sentence, constitute a Fraudulent Conveyance, the liability of Guarantor and the liens and security interests securing such liability shall be valid and enforceable only to the maximum extent that would not cause such liability or such lien or security interest to constitute a Fraudulent Conveyance.

(r)     **Unconditional Obligations**. The obligations of Guarantor shall be unconditional, irrespective of (i) the institution of any proceeding under the Bankruptcy Code, or any similar proceeding, by or against Guarantor or Borrower or Lender's election in any such proceeding of the application of Section 1111(b)(2) of the Bankruptcy Code; (ii) any borrowing or grant of a security interest by Borrower as debtor-in-possession, under Section 364 of the Bankruptcy Code; (iii) the disallowance, under Section 502 of the Bankruptcy Code, of all or any portion of Lender's claim(s) for repayment of any of Guarantor's Liabilities; or (iv) any other circumstance other than payment in full of Guarantor's Liabilities which might otherwise constitute a legal or equitable discharge or defense of a guarantor.

(s)     **Governing Law**. THE TERMS OF THE LOAN AND THIS GUARANTY WERE EACH NEGOTIATED IN THE STATE OF ILLINOIS, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING LOAN TRANSACTION, INCLUDING WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE. THEREFORE, THIS GUARANTY SHALL BE CONSTRUED AND INTERPRETED WITH, AND GOVERNED BY, THE INTERNAL LAWS OF THE STATE OF ILLINOIS, WITHOUT GIVING EFFECT TO ILLINOIS CHOICE OF LAW PRINCIPLES.

(t)     **CONSENT TO JURISDICTION**. GUARANTOR ACKNOWLEDGES THAT LENDER'S PRINCIPAL OFFICE IS LOCATED IN CHICAGO, ILLINOIS AND THAT LENDER MAY BE IRREPARABLY HARMED IF REQUIRED TO INSTITUTE OR DEFEND ANY ACTION IN ANY JURISDICTION OTHER THAN THE FEDERAL DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS,

- 14 -

EASTERN DIVISION OR THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS. THEREFORE, GUARANTOR IRREVOCABLY: (A) AGREES THAT ANY SUIT, ACTION OR OTHER LEGAL PROCEEDING RELATING TO THIS GUARANTY MAY BE BROUGHT ONLY IN THE CIRCUIT COURT OF COOK COUNTY OR FEDERAL DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION AT LENDER'S OPTION; (B) CONSENTS TO THE JURISDICTION OF EACH SUCH COURT IN ANY SUCH SUIT, ACTION OR PROCEEDING; (C) WAIVES ANY OBJECTION WHICH GUARANTOR MAY HAVE TO THE LAYING OF VENUE IN ANY SUCH SUIT, ACTION OR PROCEEDING IN ANY OF SUCH COURTS; AND (D) AGREES TO JOIN LENDER IN ANY PETITION FOR REMOVAL TO ANY OF SUCH COURTS.

(u)     WAIVER OF JURY TRIAL. GUARANTOR AND LENDER BY ITS ACCEPTANCE OF THIS GUARANTY, HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE THIS GUARANTY OR BASED UPON OR ARISING OUT OF THE SUBJECT MATTER OF THIS GUARANTY. THIS WAIVER IS KNOWINGLY, INTENTIONALLY AND VOLUNTARILY MADE BY GUARANTOR AND LENDER, AND GUARANTOR ACKNOWLEDGES THAT NEITHER LENDER NOR ANY PERSON ACTING ON BEHALF OF LENDER HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR HAS TAKEN ANY ACTIONS WHICH IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. GUARANTOR AND LENDER EACH ACKNOWLEDGE THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT EACH OF THEM HAS ALREADY RELIED ON THIS WAIVER IN ENTERING INTO THIS GUARANTY AND THAT EACH OF THEM WILL CONTINUE TO RELY ON THIS WAIVER IN THEIR RELATED FURTHER DEALINGS.

8.     **Certain Provisions of the Loan Agreement**. Without limiting Guarantor's Liabilities, Guarantor acknowledges and agrees to be personally bound by and liable for the performance of the provisions of Sections 9.10 and 9.21 of the Loan Agreement.

9.     **Additional Waivers**. Notwithstanding anything to the contrary herein, this Agreement is to be governed as set forth in Section 7(s) above, but to the extent applicable:

(a)     Guarantor hereby expressly waives any suretyship defense that may be available to such Guarantor. Without limiting the generality of the foregoing, Guarantor also waives (i) any defense based upon Lender's election to waive its lien as to all or any security for the Loan pursuant to California Code of Civil Procedure ("CCP") Section 726.5 or otherwise, and (ii) any and all benefits which might otherwise be available to such Guarantor under California Civil Code ("Civil Code") 2787-2855, 2899 and 3433, including without limitation, any

- 15 -

and all rights or defenses such Guarantor may have by reason of protection afforded to the principal with respect to any of the liabilities set forth herein or to any other guarantor, if any, of the liabilities set forth herein with respect to such guarantor's obligations under its indemnification, in either case pursuant to the anti-deficiency or other laws of the state of California limiting or discharging the principal's indebtedness or such other guarantor's obligations, including without limitation, CCP 580a, 580b, 580d or 726.

(b)    Guarantor understands and acknowledges that if Lender forecloses judicially or nonjudicially against any real property security for the Note, that foreclosure could impair or destroy any ability that such Guarantor may have to seek reimbursement, contribution or indemnification from Borrower or others based on any right such Guarantor may have of subrogation, reimbursement, contribution or indemnification for any amounts paid by such Guarantor under this Agreement. Guarantor further understands and acknowledges that in the absence of this provision, the potential impairment or destruction of such Guarantor's rights, if any, may entitle such Guarantor to assert a defense to this Agreement based on CCP Section 580d as interpreted in Union Bank vs. Gradsky. By executing this Agreement, Guarantor freely, irrevocably and unconditionally:

(i)    waives and relinquishes that defense, and agrees that such Guarantor will be fully liable under this Agreement, even though Lender may foreclose judicially or nonjudicially against any real property security for the Note;

(ii)    agrees that such Guarantor will not assert that defense in any action or proceeding that Lender may commence to enforce this Agreement;

(iii)    acknowledges and agrees that the rights and defenses waived by such Guarantor under this Agreement include any right or defense that such Guarantor may have or be entitled to assert based upon or arising out of any one or more of the following: (i) CCP Sections 580a (which if such Guarantor had not given this waiver, would otherwise limit such Guarantor's liability after any nonjudicial foreclosure sale to the difference between the obligations for which such Guarantor is liable and the fair market value of the property or interests sold at such nonjudicial foreclosure sale rather than the actual proceeds of such sale), 580b and 580d (which if such Guarantor had not given this waiver, would otherwise limit Lender's right to recover a deficiency judgment with respect to purchase money obligations and after any nonjudicial foreclosure sale, respectively), or 726 (which, if such Guarantor had not given this waiver, among other things, would otherwise require Lender to exhaust all of its security before a personal judgment may be obtained for a deficiency); or (ii) Civil Code Section 2848; and

- 16 -

(iv)    acknowledges and agrees that Lender is relying on this waiver in making the Loan, and that this waiver is a material part of the consideration that Lender is receiving for making the Loan. WITHOUT LIMITING THE FOREGOING, SUCH GUARANTOR WAIVES ALL RIGHTS AND DEFENSES THAT SUCH GUARANTOR HAS BECAUSE BORROWER'S DEBT IS SECURED BY REAL PROPERTY. THIS MEANS, AMONG OTHER THINGS:

(1)    LENDER MAY COLLECT FROM SUCH GUARANTOR WITHOUT FIRST FORECLOSING ON ANY REAL OR PERSONAL PROPERTY COLLATERAL PLEDGED BY BORROWER; AND

(2)    IF LENDER FORECLOSES ON ANY REAL PROPERTY COLLATERAL PLEDGED BY BORROWER:

a.    THE AMOUNT OF THE DEBT MAY BE REDUCED ONLY BY THE PRICE FOR WHICH THAT COLLATERAL IS SOLD AT THE FORECLOSURE SALE, EVEN IF THE COLLATERAL IS WORTH MORE THAN THE SALE PRICE; AND

b.    LENDER MAY COLLECT FROM SUCH GUARANTOR EVEN IF LENDER, BY FORECLOSING ON THE REAL PROPERTY COLLATERAL, HAS DESTROYED ANY RIGHT GUARANTOR MAY HAVE TO COLLECT FROM BORROWER.

THIS IS AN UNCONDITIONAL AND IRREVOCABLE WAIVER OF ANY RIGHTS AND DEFENSES GUARANTOR MAY HAVE BECAUSE BORROWER'S DEBT IS SECURED BY REAL PROPERTY. THESE RIGHTS AND DEFENSES INCLUDE, BUT ARE NOT LIMITED TO, ANY RIGHTS OR DEFENSES BASED UPON CCP SECTIONS 580a, 580b, 580d OR 726.

**[The remainder of this page is intentionally blank; signature page follows.]**

CH01/ 12462957.7

        **IN WITNESS WHEREOF,** Guarantor has executed this Guaranty as of the day
and year first above written.

RICHARD J. NATHAN, individually

# EXHIBIT F

 

1.      **Liabilities.**  Notwithstanding any exculpation or other provisions in any Loan Document to the contrary, Guarantor agrees to be personally liable for the payment and satisfaction of all of the following (collectively, "Guarantor's Liabilities"):

      (a)      All Losses and Expenses arising from any of the following:

           (i)      any gross negligence or willful misconduct of Borrower or any Guarantor or any of their Affiliates, agents, employees, attorneys-in-fact or representatives;

           (ii)      any removal or disposal of any portion of the Property or the Collateral by Borrower or any Guarantor or any of their Affiliates, agents or representatives after an Event of Default;

           (iii)      any security deposits, advance deposits or any other deposits collected with respect to the Property which were not delivered to Lender, except to the extent any such security deposits were applied in accordance with the terms and conditions of any of the Leases as expressly permitted by the Loan Agreement;

CH01/ 12462957.7

(iv)    any insurance policy required by the Loan Documents has not been obtained or is no longer in full force and effect, except to the extent such event is due to Lender's failure to comply with its obligations under Section 2.5.3 of the Loan Agreement;

(v)    any payment of fees to an Affiliate following an Event of Default except as expressly permitted by the Loan Documents;

(vi)    any failure to pay when due the Monthly Tax Deposit or the Monthly Insurance Deposit to the extent Revenue was available for such purpose;

(vii)    any rent being paid more than one (1) month in advance (other than security deposits) and not applied to operating expenses of the Property or payment of the Indebtedness;

(viii)    any failure to pay charges for labor or materials or other charges that could result in the creation of Liens on any portion of the Property;

(ix)    any use of Revenues generated after the occurrence of any Default for purposes other than payment of usual and customary operating expenses of the Property or the Indebtedness,

(x)    any use of Loss Recoveries for purposes other than as designated pursuant to the Loan Agreement;

(xi)    any failure to cause all Revenues to be deposited into the Blocked Account in accordance with the requirements of the Loan Agreement;

(xii)    any physical loss or damage affecting the Property resulting from the intentional acts of Borrower or its agents, or any physical or economic waste with respect to the Property or any part thereof;

(xiii)    any failure to allow inspections of the Property or access to Borrower's books and records as required by any of the Loan Documents;

(xiv)    any distributions by Borrower of cash or assets that (A) are not specifically authorized under the Loan Documents, (B) occur on or after the date the conditions required for Borrower to receive any Borrower Return (pursuant to Section 2.6 of the Loan Agreement) have been satisfied and (C) are returned to the Blocked Account within two (2) Business Days after first being disbursed therefrom;

(xv)    any failure of Borrower to fully, completely and punctually perform and satisfy the obligations, duties and agreements of Borrower under the Loan Agreement and the other Loan Documents relating to the

- 2 -

Immediate Repairs, the Retaining Wall Work and the Fire Damage Repairs (collectively, the "Work"); including, without limitation, the Completion of the Work in accordance with the terms and provisions of the Loan Agreement free and clear of any and all mechanic's and materialmen's liens, charges, security interests and claims of any kind in accordance with all applicable zoning, building, environmental, land use and other laws, statutes, ordinances, regulations and rules, within the time periods required in the Loan Agreement for Completion of the Work; and

(xvi) any failure of Borrower to obtain flood insurance for the Property satisfactory to Lender and timely deliver certificates evidencing such flood insurance to Lender as required under the Post-closing Agreement executed by Borrower of even date herewith.

# EXHIBIT G

(b)    All of the Indebtedness and other Obligations (including Losses and Expenses) in the event of:

(i)    any fraud or any material misrepresentation by or on behalf of Borrower (including by its employees, agents, Affiliates and attorneys-in fact) in connection with the Loan, including the Initial Disbursement, any Advance, obtaining any consent or determination from Lender or the submission of financial information;

(ii)    any Transfer, sale, conveyance, assignment, further encumbrance, other transfer or the creation of a security interest, by Borrower of title to, or an ownership interest in, the Property or any other Collateral or any voluntary imposition by Borrower of a Lien upon the Property or any other Collateral unless expressly permitted under the Loan Documents;

(iii)    any acquisition of assets or incurrence of indebtedness by Borrower in violation of any provision of the Loan Documents or any other material breach of Borrower's covenant to maintain its existence as a Single Purpose Entity;

(iv)    the commencement of an Insolvency Proceeding by Borrower or collusion or cooperation by Borrower or any Guarantor with any third party to commence an Insolvency Proceeding against Borrower;

(v)    an Affiliate, officer, director or representative which Controls, directly or indirectly, Borrower or any Guarantor filing, or joining in the filing of, an involuntary petition against Borrower under the Bankruptcy Code or any other Federal or state bankruptcy or insolvency law, or soliciting or causing to be solicited another creditor for the purpose of commencing any such involuntary petition against Borrower;

(vi)    Borrower filing an answer consenting to or otherwise acquiescing in or joining in any involuntary petition filed against

Borrower by any other Person under the Bankruptcy Code or any other Federal or state bankruptcy or insolvency law;

(vii)     Borrower consenting to or acquiescing in or joining in an application for the appointment of a custodian, receiver, trustee, or examiner for Borrower or any portion of the Property or the Collateral or Borrower making an assignment for the benefit of creditors;

(viii)     Borrower, Guarantor or any Affiliate of Borrower or Guarantor contesting or in any way interfering with, directly or indirectly, any foreclosure action, UCC sale or other remedy exercised by Lender upon the occurrence of any Event of Default whether by making any motion, bringing any counterclaim, claiming any defense, seeking any injunction or other restraint, commencing any action, or otherwise; or

(ix)     any distributions by Borrower of cash or assets that (A) are not specifically authorized under the Loan Documents and (B) (1) occur prior to the date the conditions required for Borrower to receive any Borrower Return (pursuant to Section 2.6 of the Loan Agreement) have been satisfied or (2) occur on or after the date the conditions required for Borrower to receive any Borrower Return (pursuant to Section 2.6 of the Loan Agreement) have been satisfied, but are not returned to the Blocked Account within two (2) Business Days after first being disbursed therefrom.

# EXHIBIT H

## ASSIGNMENT AND ASSUMPTION AGREEMENT

THIS ASSIGNMENT AND ASSUMPTION AGREEMENT (this "**Agreement**"), effective as of February 28, 2006, is made and delivered by **ORIX REAL ESTATE CAPITAL, INC.**, a Delaware corporation (the "**Company**"), to **ORIX CAPITAL MARKETS, LLC**, a Delaware limited liability company (the "**Purchaser**").

NOW THEREFORE, for Twenty Three Million Four Hundred Fifty Six Thousand Three Hundred Seventeen and 83/100 Dollars ($23,456,317.83) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Company does hereby sell, convey, transfer, assign and deliver to the Purchaser, free and clear of all liens, mortgages, pledges, encumbrances and charges of every kind, all of the Company's right, title and interest in and to all of the securities, interests, participations and other assets of the Company listed on Schedule A hereto (the "**Purchased Assets**"), including without limitation:

(a)    Any and all notes, certificates, instruments, securities and other documentary evidence of the Purchased Assets;

(b)    All receivables of the Company directly related to the Purchased Assets; and

(c)    All of the rights and interests of the Company under all contracts and other agreements to which the Company is a party or by which it is bound solely and directly related to the Purchased Assets, and all other rights and causes of action of every kind of the Company solely and directly related to the Purchased Assets.

The Purchaser hereby assumes and agrees to be bound by all of the liabilities and obligations of the Company directly arising from or directly related to the Purchased Assets that first occur or accrue from and after the date of this Agreement. The Company shall remain responsible for any such liabilities and obligations that occurred or that are applicable to periods before the date of this Agreement. Any amount related to the Purchased Assets received by the Purchaser or the Company for the account of the other party shall be remitted to the other party on a timely basis.

The parties acknowledge and agree that the purchase price is subject to mutually agreed upon adjustment due to information that becomes available after the date of this Agreement pertaining to the Purchased Assets.

The Company and the Purchaser further agree to execute such additional documents from time to time at the request of the other party as may be necessary to accomplish the transfer of assets and assumption of liabilities made under this Agreement.

[SIGNATURES ON FOLLOWING PAGE]

CH01/ 12465125.2

Effective as of the date first written above.

ORIX REAL ESTATE CAPITAL, INC., a Delaware
corporation

By:

    Name:  David R. Brown
    Title:   President and CEO

**AGREED AND ACCEPTED**
as of the date first written above:

**ORIX CAPITAL MARKETS, LLC,**
a Delaware limited liability company

By:

    Name:  Edgar L. Smith, II
    Title:   President and COO

## SCHEDULE A

## PURCHASED ASSETS

That certain Loan and Security Agreement dated as of February 28, 2006, by and between The Landings Florida, LLC, a Florida limited liability company ("**Borrower**"), and ORIX Real Estate Capital, Inc., a Delaware corporation ("**OREC**"), and all documents and agreements delivered in connection therewith, including but not limited to:

1. Note, dated as of February 28, 2006, made by Borrower to the order of OREC in the original principal amount of $26,500,000.

2. Deed to Secure Debt, Assignment of Leases and Rents and Security Agreement, dated as of February 28, 2006, made by Borrower for the benefit of OREC.

3. Assignment of Rents, Leases and Other Income dated as of February 28, 2006 by Borrower in favor of OREC.

4. Authorization to File UCC Financing Statements dated as of February 28, 2006 made by Borrower to OREC.

5. Guaranty (Payment), dated as of February 28, 2006, by Commercial Ventures, Inc., a Delaware corporation, for the benefit of OREC.

6. Guaranty (Carveout), dated as of February 28, 2006, by Richard J. Nathan for the benefit of OREC.

7. Environmental Indemnity Agreement, dated as of February 28, 2006, by Borrower and Richard J. Nathan to and for the benefit of OREC.

8. Post-Closing Agreement, dated as of February 28, 2006, between Borrower and OREC.

9. Agreement Re: Blocked Accounts dated as of February 28, 2006 made by and among Borrower, OREC and LaSalle Bank National Association.

10. Negative Pledge Agreement dated as of February 28, 2006 made by The Landings Florida Member, LLC in favor of OREC.

11. Subordination of Management Agreement and Waiver of Management Liens dated as of February 28, 2006 made by GREP Southeast, LLC-Management Series and Borrower in favor of OREC.

12. Collateral Assignment of Undertakings and Purchase Agreement dated as of February 28, 2006 by and between Borrower and OREC.

13. Letter to Lender dated as of February 28, 2006 from Borrower, Commercial Ventures, Inc. and Richard J. Nathan and countersigned by escrowee authorizing Lender to wire.

CH01/ 12465125.2

# EXHIBIT I

**FIRST AMENDMENT TO LOAN AND SECURITY AGREEMENT AND GUARANTY (PAYMENT) AND REAFFIRMATION OF GUARANTIES**

THIS FIRST AMENDMENT TO LOAN AND SECURITY AGREEMENT AND GUARANTY (PAYMENT) AND REAFFIRMATION OF GUARANTIES (this "Amendment"), which is dated as of May __, 2007, is by and between The Landings Florida, LLC, a Florida limited liability company ("Borrower"), ORIX Real Estate Capital, Inc., a Delaware corporation ("Lender") and Commercial Ventures, Inc., a Delaware corporation ("CVI") and Richard J. Nathan ("Nathan") (CVI and Nathan are collectively referred to herein as "Guarantors").

## RECITALS

A.  Whereas, Borrower and Lender have executed that certain Loan and Security Agreement dated February 28, 2006 ("Loan Agreement") in connection with a certain loan in the original principal amount of up to $26,500,000 ("Loan"). All capitalized terms used herein and not otherwise defined shall have the meanings given them in the Loan Agreement.

B.  As a condition of making the Loan, CVI executed that certain Guaranty (Payment) dated as of February 28, 2006 ("Payment Guaranty"), and Nathan executed that certain (i) Guaranty (Carveout) dated as of February 28, 2006 ("Carveout Guaranty"), and (ii) along with Borrower, that certain Environmental Indemnity Agreement dated as of February 28, 2006 ("Environmental Indemnity"). The Payment Guaranty, Carveout Guaranty and Environmental Indemnity are collectively referred to herein as the "Guaranties").

C.  Whereas, Borrower and Lender desire to amend the terms of the Loan Agreement as set forth herein, and CVI and Lender desire to amend the terms of the Payment Guaranty as set forth herein.

## AGREEMENT

NOW, THEREFORE, in consideration of (i) the facts set forth hereinabove (which are hereby incorporated into and made a part of this Amendment), (ii) the agreements by Lender to modify the Loan Agreement and the Payment Guaranty, as provided herein, (iii) the covenants and agreements contained herein, and (iv) for other good and valuable consideration, the receipt, adequacy and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1.  Interest Holdback Deficiency. Borrower acknowledges that there is presently a Deficiency with respect to the Interest Holdback. Pursuant to Section 5.2.4 of the Loan Agreement, Borrower agrees to deposit with Lender concurrently with the execution and delivery of this Amendment the sum of $300,000 ("Interest Deposit") to be held by Lender in accordance with the terms of said Section 5.2.4. Upon Lender's receipt of the Interest Deposit, Lender shall reallocate $200,000 from the CapEx Holdback to the Interest Holdback by reducing the line item for "Washer/Dryer connections" shown on Exhibit G to the Loan Agreement by $200,000 and by increasing the Interest Holdback by $200,000. Accordingly, Borrower and Lender agree that the Interest Holdback as defined in Section 1.1.4 of the Loan Agreement is

hereby amended to mean $600,000 and that Exhibit B and Exhibit G to the Loan Agreement are hereby deleted in their entirety and are replaced with Exhibit B and Exhibit G attached hereto. Borrower and Lender agree that any Monthly Interest Deficiency shall be funded first out of the Interest Deposit before Lender makes any further Advances out of the Interest Holdback.

2.    <u>Advances</u>.  The following is hereby added as the final sentence to Section 3.2.1(b) of the Loan Agreement: "Notwithstanding anything contained in this Agreement to the contrary, in no event shall Lender be obligated to make Advances in any thirty (30) day period in an amount greater than $100,000."

3.    <u>Rebalancing</u>.  The following paragraph is hereby added as Section 5.5 of the Loan Agreement:

5.5    <u>Rebalancing.</u>  In the event the entire outstanding principal balance of the Loan, including all Accrued Interest and the Exit Fee, is not paid in full on or before October 31, 2007, Borrower shall deposit with Lender no later than October 31, 2007 an amount which, when added to the then unfunded amount of the Interest Holdback, shall cause the available amount of the Interest Holdback to equal $200,000.

4.    <u>Payment Guaranty</u>.  Section 9(b) of the Payment Guaranty is hereby amended by deleting the phrase "One Million Five Hundred Thousand Dollars ($1,500,000)" and replacing it with the following: "One Million Seven Hundred Thousand Dollars ($1,700,000)."

5.    <u>Representations</u>.  Borrower hereby represents, covenants and warrants to Lender as follows:

(a)    The representations and warranties in the Loan Agreement and the other Loan Documents are true and correct as of the date hereof.

(b)    There is currently no Event of Default or event which with notice or the passage of time or both would become an Event of Default under the Note, the Mortgage, the Loan Agreement or the other Loan Documents.

(c)    The Loan Documents are in full force and effect and, following the execution and delivery of this Amendment, they continue to be the legal, valid and binding obligations of Borrower enforceable in accordance with their respective terms, subject to limitations imposed by general principles of equity.

(d)    There has been no material adverse change in the financial condition of Borrower, Guarantors or any other party whose financial statement has been delivered to Lender in connection with the Loan from the date of the most recent financial statement received by Lender.

(e)    As of the date hereof, Borrower has no claims, counterclaims, defenses, or set-offs with respect to the Loan or the Loan Documents as modified herein.

(f)    Borrower is validly existing under the laws of the State of its formation or organization and has the requisite power and authority to execute and deliver this Amendment.

CH01/ 12509281.2

2

The execution and delivery of this Amendment has been duly authorized by all requisite action by or on behalf of Borrower and this Amendment has been duly executed and delivered on behalf of Borrower.

6.  Reaffirmation by Guarantors. As a part of the amendments contained herein, Guarantors hereby (i) consent to and acknowledge this Amendment; and (ii) reaffirm and acknowledge their liability to Lender under the Guaranties subject to their terms and agree that the duties, liabilities and obligations under the Guaranties shall not in any manner be impaired, discharged or released by this Amendment. Further, Guarantors reaffirm: (i) as true and correct in all material respects as of the date hereof, any and all of the representations, warranties and covenants contained in the Guaranties; and (ii) except as modified hereby, the Guaranties and the obligations thereunder remain unmodified and in full force and effect in accordance with their terms.

7.  Miscellaneous.

(a)  As a condition precedent to the agreements contained herein, Borrower shall pay all out-of-pocket costs and expenses incurred by Lender in connection with this Amendment, including, without limitation, all attorneys' fees and expenses.

(b)  This Amendment shall be governed by and construed in accordance with the laws of the State of Illinois.

(c)  This Amendment shall not be construed more strictly against Lender than against Borrower or Guarantors merely by virtue of the fact that the same has been prepared by counsel for Lender, it being recognized that Borrower, Guarantors and Lender have contributed substantially and materially to the preparation of this Amendment, and Borrower, Guarantors and Lender each acknowledges and waives any claim contesting the existence and the adequacy of the consideration given by the other in entering into this Amendment.

(d)  Any references to the "Loan Agreement" contained in any of the Loan Documents shall be deemed to refer to the Loan Agreement as amended hereby. Except as expressly modified hereby, the terms of the Loan Agreement is and remains unmodified and in full force and effect.

(e)  This Amendment shall bind and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and assigns.

(f)  This Amendment may be executed in one or more counterparts, all of which, when taken together, shall constitute one original document.

(g)  The execution hereof by Lender shall not in any way constitute an estoppel of and/or waiver by Lender of any and all existing defaults under the Loan Documents, whether or not known to Lender as of the date of execution hereof. Lender hereby expressly reserves any and all of its rights under the Loan Documents as to any defaults that may exist under any of the Loan Documents as of the date hereof.

(h)    BORROWER, GUARANTORS AND LENDER WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS UNDER (i) THIS AMENDMENT, THE NOTE, THE GUARANTIES, THE LOAN AGREEMENT OR UNDER ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH OR THEREWITH.   BORROWER,   GUARANTORS AND LENDER AGREE THAT ANY SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.

**[The next page is the signature page]**

**IN WITNESS WHEREOF,** the parties hereto caused this Amendment to be executed as of the day and year first above written.

BORROWER:

**THE LANDINGS FLORIDA, LLC,**
a Florida limited liability company

> By:  The Landings Florida Member, LLC,
> a Delaware limited liability company,
> Its Sole Member and Manager
>
> > By:  Spinnaker/Regatta V, LLC,
> > a Washington limited liability company,
> > Its Sole Member and Manager
> >
> > > By:  CVI/Spinnaker/Regatta V, Inc.,
> > > a Washington corporation,
> > > Its Manager
> > >
> > > By: _____
> > > Name: Richard Nathan
> > > Title:  President and Sole Director

GUARANTORS:

**COMMERCIAL VENTURES, INC.,**
a Delaware corporation

By: _____
Print Name:  Richard Nathan

_____
**RICHARD J. NATHAN,** individually

LENDER:

**ORIX REAL ESTATE CAPITAL, INC.,** a Delaware
corporation

By: _____
Name: _____
Title: _____

# EXHIBIT B

## Loan Budget

| Sources | | | | | | |
|---|---|---|---|---|---|---|
| Initial Funding | $24,100,000 | | | | | |
| CapEx Holdback | $1,800,000 | | | | | |
| Interest Reserve | $600,000 | | | | | |
| Max Loan Commitment | $26,500,000 | | | | | |
| Borrower Cash Equity | $3,965,000 | | | | | |
| Total Sources | $30,465,000 | | | | | |
| | | | | | | |
| | | | | | | |
| Uses | | | | | | |
| Purchase Price | $26,850,000 | | | | | |
| Capital Improvements | $1,800,000 | | | | | |
| Interest Reserve | $600,000 | | | | | |
| Lender Fee | $270,000 | | | | | |
| Insurance | $200,983 | | | | | |
| Insurance Reserve | $19,295 | | | | | |
| Legal | $142,525 | | | | | |
| Broker Fee | $132,500 | | | | | |
| Deposits | $96,895 | | | | | |
| Working Capital | $125,898 | | | | | |
| Third Party Reports | $10,200 | | | | | |
| Tax Reserves | $127,144 | | | | | |
| Pest Control | $19,500 | | | | | |
| Closing Costs | $64,614 | | | | | |
| Prepaid Interest | $5,446 | | | | | |
| Total Uses | $30,465,000 | | | | | |
| | | | | | | |
| Borrower is escrowing funds with the Lender to complete work outside of the Loan Budget: | | | | | | |
| (1) $200,000 for repair to railroad ties (Section 2.8 Retaining Wall Reserve) | | | | | | |
| (2) $50,000 for fire damage to one living unit (Section 2.7 Fire Damage Reserve) | | | | | | |
| (3) $268,250 for capital improvements outside of the Approved CapEx Budget | | | | | | |

**EXHIBIT G**

**Approved CapEx Items (including Immediate Repairs)**

**Interior**

| | Total | # Units | Per Unit |
|---|---|---|---|
| Paint, carpet, vinyl flooring (as necessary) | $1,100,000 | 440 | $2,500 |
| Washer/Dryers (2 bedroom units) | $73,500 | 105 | $700 |
| Washer/Dryer connections | $126,500 | 115 | $1,100 |
| **Total/Interior Holdbacks** | **$1,300,000** | | |

**Exterior (Immediate Repairs)**

| | |
|---|---|
| Parking Lot Repair/Overlay | $98,000 |
| Repair/Replace Entry Gates/Access | $7,000 |
| Repair/Replace Signage/Flags | $5,000 |
| Repair Pool/Spa Surface and Equipment | $10,000 |
| Resurface Tennis Courts | $16,000 |
| Repair/Replace Exterior Stairs | $126,000 |
| Repair/Replace Balconies | $50,000 |
| Painting/Siding Repair | $88,000 |
| Contingency | $100,000 |
| **Total/Exterior Holdbacks** | **$500,000** |

| | |
|---|---|
| **Total CapEx Holdbacks** | **$1,800,000** |